# HJORTH ROYALTY COMPANY vs. TRUSTEES OF UNIVERSITY

(No. 1049, January 8th, 1924; 222 Pac. 9.)

SUITS AGAINST THE STATE—UNIVERSITY LANDS—ACTIONS INVOLVING UNIVERSITY LANDS, STATE IS REAL PARTY IN INTEREST—UNIVERSITY TRUSTEES ARE STATE AGENTS.

1. No suit can be maintained against the state until the Legislature has made provision therefor, pursuant to Art. I, Sec. 8 of the Constitution.
2. The Act of Admission approved July 10th, 1890, granting certain lands to the State for the use and benefit of the State University, directs that said lands shall forever remain under the exclusive control of the State, the grant being made to the State, and not to the University.
3. In actions involving the title or possession of lands granted by Congress for the support of the State University, the State is the real party in interest.
4. For purposes of jurisdiction, there is no distinction between suits against the State and suits against its property.
5. Until the Legislature expressly directs the manner, and the Courts in which suits can be brought against the Trustees of the University of Wyoming as a body corporate, to quiet title to University lands, suits of that character may not be maintained against it.

APPEAL from the District Court, Natrona County; JAMES H. BURGESS, Judge.

Action by Hjorth Royalty Company against the Trustees of the University of Wyoming to quiet title to certain lands. There was a judgment for defendant and plaintiff appeals.

*William O. Wilson,* for appellant.

Suits may be brought against the State as the Legislature may direct. Art. I, Sec. 8 Constitution; the University pays out its own income, 471 C. S., and is recognized as a body corporate. Actions to quiet title may be brought by one in possession, 6234 C. S. Plaintiff must establish his own title, 32 Cyc. 1369. The demurrer admits the title and possession of Appellant; appellee cannot maintain an adverse claim to mineral land. U. S. Comp. Stats. 4658, ed 1918. A valid mineral location cannot be made on a prior existing valid location. Bergtuist v. Company, 106 Pac. 676. Lands granted by Congress to the University, vest in the University; Const. Art. VII, Sec. 15. The Constitution provides for a Board of University Trustees, who shall manage its lands and other property. Art. VII, Sec. 17. The Board is a body corporate, 470 C. S., clothed wtih power to hold, manage, lease or dispose of, all property of the University. 471 C. S. The provisions of the Constitution and Laws of the State relating to the University and the management of its property differ from those relating to other State Institutions. If the land in question may be vested in the State for the benefit of the University, irrespective of plaintiff's claims, it is deprived of its property without due process of law. Inhabitants v. Sigma Alpha Epsilon, 74 Atl. 19; Phoenix Co. v. University, 197 Fed. 425. The University may be sued, Interstate Co. v. Regents, 199 Fed. 509; Moscow Co. v. Regents, 113 Pac. 731. It is a body corporate. State v. Board, 9 So. 577; Reitson v. Com'rs. 120 U. S. 390; Louisiana College v. Keller, 10 La. 470; State v. Irvine 14 Wyo. 318, cited by appellee is not in point, the Agricultural College not being a corporation.

*N. E. Corthell,* for appellee.

The Court below sustained a demurrer to the petition on the ground that it was an attempt to sue the State. Plain-

tiff stood on its petition and judgment was rendered against it; this is a suit against the State which may not be maintained without specific authority of the Legislature, 36 Cyc. 911; Art. I, Sec. 8 authorizing the Legislature to provide for suits against the State is not self-executing, 36 Cyc. 913; a suit against a department of State government, or a Board, or Corporation created for governmental purposes, is a suit against the State, and cannot be maintained without its consent. 36 Cyc. 919. The University was established by Art. VII, Section 15 of the Constitution, and all lands granted to it by Congress were made to vest in the University. Sec. 17 of the same Article directed the creation of a Board of Trustees to manage its property. In State v. Irvine, 14 Wyo. 325, this Court held that Congressional land grants for the University were grants to the State, and this was affirmed in State v. Irvine, 206 U. S. 278. Similar decisions have been made in other States relating to various public institutions. Alabama Girls Indus. School v. Reynolds, 42 So. 114; Ahearn v. Ia. State Agri. Soc., 58 N. W. 1092; Williams v. Louisville Indus. School of Reform, 95 Ky. 251, 24 S. W. 1065; Okla. Agri. & Mechanical College, v. Willis, 6 Okla. 593, 52 Pac. 921. In other cases the point established shows the character of the institution as a State agency. Kan. State Agri. College v. Hamilton, 28 Kan. 376; Aud. Gen. v. Regents of Uni. (Mich.) 47 N. W. 440; Von Fael v. State, ex rel, Ansley (Nebr.) 96 N. W. 648, 649. The State holds the title. Hopkins v. College, 221 U. S. 636. If the land in question is property of the University it is State Land. The cause of action is not one arising upon a contract of the State University nor upon its tort, it is a direct attack upon the State's title to land. The Court is without jurisdiction of the cause.

The Idaho case involved the enforcement of contracts; the case of Arona Sae Soc. cited by Appellant, sought the enforcement of taxes and serves more to support, than to refute defendant's position. The statutory provision cited

as authority for maintaining this suit appears to be offered as an inference of the capacity of the University to be sued and not as express authority. Express authority to sue State subordinate agencies appear in the Statutes, but none may be found authorizing suits against the University. Until the Legislature has provided authority for suits against the University no action of the kind may be maintained.

ARNOLD, District Judge.

The appellant was petitioner and the appellee was defendant below.

The suit was commenced to quiet title to the NE¼ of Sec. 32, Twp. 40 N, R. 79 W. 6th P. M. The petition is in the ordinary form of an action to quiet title; plaintiffs claiming a legal estate in said lands as an oil placer mining claim subject to the paramount title of the United States, and further stating that the defendant claims an estate or interest in said lands, but that the said claim is without any right or claim of right. A demurrer was filed to the petition on the ground that the court had no jurisdiction of the person of the defendant or the subject of the action, and that the petition did not state facts sufficient to constitute a cause of action. The demurrer was sustained on the theory that the suit is in effect a suit against the state, which has title to the lands, and that no right to sue the state has been granted by the Legislature. The appellant refusing to plead further, judgment was rendered for respondent, from which this appeal has been taken. It may be doubtful whether the title or claim to the land adverse to that of appellant is sufficiently set forth in the petition to raise the question which furnishes the basis of the decision of the trial court. But it was conceded on the argument of this case that the land in question is part of the seventy-two sections of land mentioned in Sec. 8 of the Act of Admission of Wyoming, being land granted to the state for the benefit of a university, and which is part of the same land considered in the case of Wm. B. Ross, Governor, et al., vs. the Trustees of

the University of Wyoming, decided this date. And the contention of appellant is that the title to land held under the said section of said Act of Admission is vested, not in the state, but in the Trustees of the University of Wyoming as a corporate body; that the land is mineral land and could not validly be acquired by said Trustees under said Act of Admission, and that the said Trustees as a corporate body may be sued. The case having been determined below in view of the facts and on the theory mentioned, and these facts being admitted here, we may waive any defect in the allegations of the petition, and determine the case as though these facts had been alleged therein.

The questions herein are whether the title to the lands granted under the provisions of the act of admission above mentioned is in the state or in the Trustees of the University, and whether the defendant in this kind of an action is entitled to the same privilege that the State of Wyoming could assert by reason of the Legislature not having made provision for such suits under the Constitution which declares:

"Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." (Article 1, Sec. 8, Constitution.)

The general rule appears to be that such provisions are not self-executing, and no suit can be maintained against the State until the Legislature has made provision therefor (36 Cyc. 913), and no consent having been given by the State it is evident that this suit could not be maintained against the State, therefore we need now only to consider the question whether this suit constitutes a suit against the State.

The attorney for the appellant in his brief and argument calls the attention of this court to the distinction between the powers vested by the Legislature in the said corporate body and those possessed by the managing agents and officers of the other state institutions of Wyoming. He refers

to the construction which the trustees of the University place upon their powers by contending among other things that they have "absolute control over the funds" and "absolute control over the land, for their benefit, free from all dominion of the State Board of Land Commissioners." He cites a number of decisions from other states which he submits are in harmony with his contention that the appellant is entitled to maintain this action. He especially calls the attention of this Court to certain Idaho Cases, and particularly to the case of Phoenix Lumber Company v. Regents of the University of Idaho, (C. C.) 197 Fed. R. 425, and the case of Interstate Construction Co. vs. Regents of the University of Idaho, (D. C.) 199 Fed. R. 509.

In these Idaho cases it was sought to enforce contracts of the Regents of the University. There was no direct attack upon the title to lands as we find in this case.

The said Federal Court found, among other things, that it has been the policy of the State of Idaho in creating Boards and bodies to place them within the jurisdiction of the Court regardless of whether such boards and bodies were incorporated or not, and that:

"It has created and maintained other public institutions and essentially different in character from the University. There are, for business, the two State Normal Schools, and the State Academy, all strictly educational, and all public in character. There is also the State Industrial School, both reformative and educational but also of a public character. The government of each of these institutions is vested in a board appointed by the Governor of the State, not incorporated, but expressly declared to have the power to sue and be sued."

The Regents of the University of Idaho were created a body corporate by the acts of the Territorial Legislature, approved Jan. 30, 1899, and later the Constitution of said State under the provisions of Section 10, Article 9, recognized said body corporate and its powers in words less in-

dicative of the State's exclusive control than are the sentences coined by the words used in the enabling act and the Constitution of Wyoming.

The Legislature and courts of Wyoming have not thus far adopted the policy that the Federal Judge found existing in Idaho.

Let us trace the Wyoming Policy.

Looking back to the territorial days we find that the Legislature in 1886 established in this State at the City of Laramie an institution of learning under the name and style of "The Universtiy of Wyoming" (Sec. 465, Wyo. Comp. Stat. 1920), and that the Legislature vested the government of the University in a board of seven trustees. (S. L. 1886 Ch. 37, Sec. 36).

Among the powers of the board of trustees the fifth and sixth paragraphs of Section 42 of said Act provided: To take and hold for the benefit of the University, any real or personal estate, and to dispose of the same in such manner as it may deem most conductive to the interests of the University. To expend the income placed under its control by the provisions of this chapter and such other funds as it may receive, in such manner as shall best promote the interest and property of the University. Section 36 of that Act reads as follows:

"Such Board of Trustees shall be authorized, whenever it deems the same expedient, to incorporate under the general corporation laws of this territory, and may thereby acquire, in addition to the powers herein named, the general powers of a body politic and corporate."

It will be noted that this board at no time availed itself of the privilege thus afforded to incorporate under the general corporation laws, but its status remained the same until the First Legislature of the State in 1890-91, passed an act entitled "An Act to Amend so much of chapter one of title forty-two of the revised Statutes of Wyoming as relates to the establishment, government and maintenance of the Uni-

versity of Wyoming;" wherein it was declared among other things that:

"The board of trustees' and their successors in office shall constitute a body corporate by the name of "The Trustees of the University of Wyoming."

Among the powers granted said body corporate are certain powers relating to real estate as follows:

"* * * to possess and use for the benefit of the institution all the property of the University: to hold, manage, lease, or dispose of, according to law, any real or personal estate, as shall be conductive to the welfare of the institution, to expend the income placed under their control, from whatever source derived, and finally to exercise any and all other functions properly belonging to such a board necessary to the prosperity of the University in all its departments." (Sec. 471, Wyo. Comp. Stat. 1920).

The Act of Admission, approved July 10, 1890, just six months before the approval of the 1890-91 law with its provisions relating to land grants to the University was then fresh in the minds of the legislature, including the declaration that "The Schools, colleges, and universities provided by this Act shall forever remain under the exclusive control of the said, State," and in harmony with such exclusive control the State Constitution declared that the Legislature shall provide by law and for the management of the University, its lands and other property by a board of trustees, consisting of not less than seven members to be appointed by the governor *by and with the advice and consent of the senate.* (Constitution, Article VII Sec. 32.)

In State ex rel Agricultural College v. Irvine (14 Wyo. 318, 84 Pac. 90), this court considered the constitutional and statutory provisions relating to congressional grants, and it was held that the authority conferred upon trustees, by the act establishing the Wyoming Agricultural College,

"to possess and use for the benefit of the agricultural college the building and sites" provided therefor, and "to take and hold for the use and benefit of the college any real and personal estate and to dispose of the same in such manner as they may deem most conductive to the interests" of said college, is not inconsistent with the character of a public educational institution. In respect thereto the trustees are public agents. And it was held that the congressional land grants are grants to the state and not to the University. This decision was affirmed by the Supreme Court of the United States. (206 U. S. 278, 27 Sup. Ct. 613, 51 L. ed. 1063.)

If this institution of learning has an interest in the forty acre tract of land, the state as the holder of the title to the lands mentioned in the provisions of the Act of Admission heretofore mentioned, is the real party in interest, and to permit this action would be doing by indirection that which could not be done directly.

It has been held that for the purpose of jurisdiction there is no distinction between suits against the government directly, and suits against its property. Stanley vs. Schwalby, 147 U. S. 508, 13 Sup. Ct. Rep. 418; 37 L. ed 259; Stanley vs. Schwalby, 162 U. S. 255, 16 Sup. Ct. Rep. 754, 40 L. ed 960.

Among the numerous decisions of other courts we find that the Supreme Court of Alabama in White v. Alabama Insane Hospital, 138 Ala. 479, 35 Southern, 454, says:

"Who doubts the right of the State to create a corporation for the management of an insane hospital, or a deaf and dumb asylum, or an institution of learning? And, where they are created, who has the property interest in these institutions? Clearly the State. In the exercise of its right of sovereignty it established them for public purposes."

"A suit against a department of the State Government or a board or corporation created by the state for govern-

mental purposes is a suit against the state, and cannot be maintained without its consent, but such a suit may be maintained when authorized by statute, as where the statute creating the corporation provides that it may sue and be sued.'' 39 Cyc. 919.

In Williamson vs. Louisville Industrial School of Reform, 95 Ky. 251, 24 S. W. 1065, 15 Ky. Law Rep. 629, 23 L. R. A. 200, 44 Am. St. Rep. 243, the Court says:

''The Appellee, the Louisville Industrial School of Reform, was created a body corporate by an act of the general assembly in 1854. * * * The incorporators and their successors are under the control and oversight of the Legislature, and are mere instrumentalities of the commonwealth. * * * It is an Agency of the State, and maintained by taxation, and state aid. * * * The functions of the institution are governmental. It is not answerable for an assault upon a beating of an inmate by one of its employees.''

The Agricultural and Mechanical College which is strictly a public or quasi corporation, created and existing under and by virtue of the laws of the territory of Oklahoma, cannot in the absence of express statutory authority therefor, be sued, and no such authority exists in this territory, hence said institution cannot be sued. (Oklahoma Agricultural and Mechanical College vs. Willis, et al., 6 Okla. 593, 52 Pac. 921, 40 L. R. A. 677.

Whether a state should consent to be sued, so as to put itself on an equality with a citizen, is not a matter for the courts, but for the Legislature. (Moore vs. Tate, 87 Tenn. 725, 11 S. W. 935, 10 Am. St. Rep. 712.

There is no provision of law anywhere that either expressly or by implication recognizes the defendant in this case as a body capable of being sued in suits to quiet title to real property, and until the legislature expressly directs the manner and the Courts in which such suits can be brought, we conclude that the defendant is an agency that cannot be sued in a suit of this kind.

The demurrer was properly sustained; no error was committed by the lower court, and the judgment is in all things affirmed.

Blume, J., and District Judge P. W. Metz, concur.

NOTE—See 12 C. J., p. 739; 11 C. J., p. 987; 36 Cyc. 911, 913, 919.