**Joe Harold WILLIAMS et al., Plaintiffs,**

v.

**Lloyd EATON, as Football Coach of the University of Wyoming, et al., Defendants.**

**Civ. No. 5412.**

United States District Court,
D. Wyoming.

Oct. 18, 1971.

Charles E. Graves, Graves & Smyth, Weston W. Reeves, Cheyenne, Wyo., Hatchett, Brown, Waterman & Campbell, Pontiac, Mich., Jack Greenberg and Haywood Burns, New York City, for plaintiffs.

Clarence A. Brimmer, Atty. Gen., Cheyenne, Wyo., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KERR, District Judge.

The above entitled matter coming on regularly for hearing before this Court upon the mandate of the United States Court of Appeals, Tenth Circuit, 443 F. 2d 422, wherein it was stated that the cause be remanded for further proceedings for equitable and declaratory relief, and the Court having heard and received the evidence adduced on behalf of each of the parties hereto, and having heard the arguments of counsel, makes the following Findings of Fact and Conclusions of Law, to-wit:

### FINDINGS OF FACT

1. That three of the original Plaintiffs, John M. Griffin, Donald K. Meadows and Theodore T. Williams, have voluntarily withdrawn as parties from the above entitled action;

2. That ten of the Plaintiffs in the above entitled action, Joe Harold Williams, Earl Lee, Ron Hill, Anthony E. McGee, William Lark Hysaw, Jerome Berry, Ivy Moore, Lionel Earl Grimes, James Isaac and Anthony Gibson, failed to appear and offer any evidence in support of their claims in the above entitled cause;

3. That only one of the original 14 Plaintiffs, Melvin R. Hamilton, appeared in person and offered evidence in support of his claims;

4. That each of the Plaintiffs were members of the University of Wyoming football team on the morning of October 17, 1969, when, at the approximate hour of 9:30 a. m., the Plaintiffs, while dressed in civilian clothing, confronted Head Football Coach Lloyd Eaton and

members of his coaching staff in Memorial Fieldhouse at the University of Wyoming, at which time each of the Plaintiffs were wearing black armbands; that at that time the spokesman for Plaintiffs was also one of the Plaintiffs, Joe Harold Williams, who was then serving as a tri-captain of the University of Wyoming football team; that prior thereto, and after football practice on the afternoon of October 16, 1969, Head Coach Lloyd Eaton had spoken with Joe Harold Williams as such tri-captain, at which time Coach Eaton was in possession of a copy of a letter dated October 14, 1969, addressed to Dr. William D. Carlson, President of the University of Wyoming, signed by Willie S. Black, as Chancellor of the Black Students Alliance, an organization on the campus of the University of Wyoming, demanding that:

(a) University officials at the University of Wyoming, as well as other member institutions in the Western Athletic Conference, not use student monies and university facilities to play host to and thereby in part sanction alleged inhuman racist policies of the Church of Jesus Christ of Latter-Day Saints, hereinafter referred to as the Mormon Church;

(b) That athletic directors in the Western Athletic Conference refuse to schedule and play games with Brigham Young University so long as the Mormon Church continues such alleged policies;

(c) That black athletes in the Western Athletic Conference protest in some way any contest with Brigham Young University so long as the Mormon Church continues such alleged policies; and

(d) That all white people of good will, athletes included, protest with their Black fellows a policy allegedly clearly inhuman and racist and that the symbol of protest be the black armband worn throughout any contest involving Brigham Young University.

That Coach Lloyd Eaton on October 16, 1969, made specific references to the letter and reminded Joe Harold Williams of the coaching rule prohibiting members of the University of Wyoming football team from participating in demonstrations and protests, and Coach Eaton advised said Joe Harold Williams that there would be no demonstrations or protests in relationship to the scheduled football game between Wyoming and Brigham Young University; that at the time of the meeting and conference between Head Football Coach Lloyd Eaton and Joe Harold Williams, each of the Plaintiffs were members of the Black Students Alliance, an organization on the campus of the University of Wyoming; that at the time of the said meeting, there was in existence a football coaching rule enumerated by the coaching staff at the University of Wyoming prohibiting members of the University of Wyoming football team from participating in demonstrations and protests and that such rule had been made well known to each of the Plaintiffs during the Spring football practice of 1969, again during the Fall football practice of 1969, again specifically on October 14, 1969, and again at the conference between Coach Eaton and Joe Harold Williams held following practice on October 16, 1969.

5. That at all times commencing with Spring football practice of 1969, to and until October 17, 1969, the Plaintiffs were aware of the existence of the football coaching rule prohibiting members of the University of Wyoming football team from participating in protests and demonstrations; that during this entire time, none of the Plaintiffs protested or objected to the football coaching rule, and that during this time each of the Plaintiffs accepted the benefits of athletic scholarships granted them by the University of Wyoming for their attendance and education at the University of Wyoming in return for their agreement to play football for the University.

6. That when the Plaintiffs confronted Coach Lloyd Eaton in Memorial Fieldhouse, University of Wyoming, at Laramie, Wyoming, at the approximate hour of 9:30 a. m., on the morning of October 17, 1969, dressed in civilian clothing,

each of the Plaintiffs were wearing black armbands in specific protest demonstration against claimed religious beliefs of the Mormon Church and Brigham Young University.; each of the Plaintiffs were then members of the University of Wyoming football team and were then in violation of the football coaching rule prohibiting members of that team from participating in demonstrations and protests; each of the Plaintiffs were then and there using the tax-supported facilities and properties of the University of Wyoming and, therefore, of the State of Wyoming, and were undertaking a protest demonstration against the Mormon Church involving religious beliefs of that Church and Brigham Young University; that Coach Lloyd Eaton informed the Plaintiffs that they were dismissed from the University of Wyoming football team.

7. That immediately following the confrontation between the Plaintiffs and Coach Eaton, President William D. Carlson of the University of Wyoming and his administrative staff undertook and conducted hearings into the dispute; President Carlson and his staff met and spoke with Coach Lloyd Eaton, Athletic Director Glen Jacoby, and the entire University of Wyoming football coaching staff and during this conference, Coach Eaton related to President Carlson that he had definitely applied the football coaching rule prohibiting members of the football team from participating in any demonstrations or protests such as the one then undertaken by the Plaintiffs against the LDS Church and the Mormon religion; that Coach Lloyd Eaton stated to President Carlson, which was thereafter related to the Plaintiffs, that he would meet and discuss the return of the Plaintiffs by meeting with them personally and individually; and that none of the Plaintiffs elected or agreed in anywise to meet or speak with Coach Eaton individually.

8. That following the meeting with Coach Eaton, Athletic Director Jacoby and the football coaching staff, President William D. Carlson and his admin-istrative staff then met with the Plaintiffs and one Willie S. Black, Chancellor of the Black Students Alliance, an organization on the campus of the University of Wyoming; that this meeting commenced in the late morning of October 17, 1969, and continued into the late afternoon of that day; that during the time of these meetings the Plaintiffs made a number of remarks relating to claimed discriminatory racial policies of the Mormon Church and Brigham Young University as they relate to the black man; that during these meetings each of the Plaintiffs was wearing a black armband in protest-demonstration to claimed religious beliefs of the Church of Jesus Christ, Latter-Day Saints, commonly known as the Mormon Church, and Brigham Young University.

9. President William D. Carlson of the University of Wyoming has testified that as a result of the hearings and conferences which he and his administrative staff conducted that he, as President of the University of Wyoming, had the power and authority to overrule Lloyd Eaton relating to this dismissal of the Plaintiffs but that he had determined that the dispute, together with the possibilities of settlement thereof, should be heard and considered by the highest governing board of the University of Wyoming, the Board of Trustees, as the final and ultimate University authority to determine the dismissal of the Plaintiffs.

10. That the Defendant Coach Lloyd Eaton, Athletic Director Glen Jacoby and the entire coaching staff, together with the Plaintiffs herein and Willie S. Black were informed of the fact that an emergency-hearing would be held and conducted by the Board of Trustees of the University of Wyoming commencing at the approximate hour of eight o'clock p. m., on the evening of October 17, 1969, and that all of the interested and affected parties to the dispute would be heard; that prior notice of the emergency-hearing was given to all parties in ample time for them to prepare to present their views to the Board of Trustees; that the emergency-hearing of the Board of Trus-

tees of the University of Wyoming was called by C. E. Hollon, President of the Board of Trustees; that due to wintery blizzard conditions, arrangements were made by the University administration and President C. E. Hollon of the Board of Trustees, to install microphones, a loud speaker and direct telephone hook-up communication with absent members of the Board of Trustees in such a manner that all statements made by parties appearing before the Board would be heard and considered and absent members could make inquiries; that Governor Stanley K. Hathaway, as an ex-officio member of the Board of Trustees, traveled from Cheyenne to Laramie, Wyoming, to attend the emergency-hearing; that the Board of Trustees convened and first met with the Defendants Coach Lloyd Eaton, Athletic Director Glen J. Jacoby and the entire University of Wyoming football coaching staff, at which time the Board of Trustees received all of the views, expressions of fact, opinions and explanations of these parties; that thereafter the Board next met with the Plaintiffs who were accompanied by one Willie S. Black as Chancellor of the Black Students Alliance; that the Plaintiffs, Joe Harold Williams and Willie Lark Hysaw, and the said Willie S. Black acted and served as spokesmen for the Plaintiffs, and the Board of Trustees met with the Plaintiffs and the said Willie S. Black for a period of approximately two hours in the Conference Room of the Board of Trustees, during which time each of the fourteen Plaintiffs had the opportunity to be heard fully, and each of the Plaintiffs who desired to do so, fully and completely expressed their relation of the facts surrounding the dispute, their views, opinions and recommendations; that during the period and time of their appearance before the Board of Trustees each of the Plaintiffs were wearing black armbands in specific protest of certain claimed religious beliefs of the Mormon Church and Brigham Young University; that during the said emergency-hearing before the Board of Trustees, certain of the Plaintiffs stated that they insisted and made demand upon the Board of Trustees that they be permitted to wear the black armbands during the scheduled intercollegiate football game to be played at Memorial Stadium, Laramie, Wyoming, on the afternoon of October 18, 1969, between the University of Wyoming football team and the Brigham Young University football team, in specific protest of certain claimed religious beliefs of the Mormon Church and Brigham Young University, and none of the Plaintiffs responded otherwise; that during the meeting certain of the Plaintiffs stated to the Board that they would not return to the University of Wyoming football team so long as the Defendant Lloyd Eaton remained as Head Football Coach of the University of Wyoming, and none of the Plaintiffs responded otherwise.

11. That following the formal appearance of the Plaintiffs before the Board of Trustees, Governor Hathaway and President Carlson spoke independently with the Plaintiffs in President Carlson's executive offices adjoining the Board of Trustees Meeting-Conference Room; that Governor Stanley K. Hathaway inquired of the Plaintiffs whether they intended to wear the black armbands on the playing field during the University of Wyoming-Brigham Young University football game scheduled to be played at Memorial Stadium, Laramie, Wyoming, on the afternoon of October 18, 1969; that both Governor Hathaway and President Carlson have testified that the Plaintiffs responded that they did intend to wear the black armbands, and none of the Plaintiffs responded otherwise; that Governor Hathaway testified, corroborated by the testimony of President Carlson, that he inquired of the Plaintiffs whether, ignoring the University of Wyoming-Brigham Young University football game, they would return to the University of Wyoming football team, and both Governor Hathaway and President Carlson testified that certain of the Plaintiffs responded that they would not return so long as the Defendant Lloyd Eaton remained as Head Foot-

ball Coach, and that none responded otherwise; that the remarks attributed to the Plaintiffs were thereafter related to the Board of Trustees by both Governor Hathaway and President Carlson.

12. That during the deliberations by the Board of Trustees in relationship to the dispute, and after hearing each and all of the interested and affected parties, the Board of Trustees discussed the constitutional principle of separation of Church and State both as it relates to the United States Constitution and the Constitution of the State of Wyoming, and after full discussion and deliberation, the Board of Trustees sustained the action of Coach Lloyd Eaton dismissing the Plaintiffs from the University of Wyoming football team on the ground that should the University of Wyoming or its governing officials permit or allow the Plaintiffs, as representatives of the University of Wyoming under the rules of the Western Athletic Conference, to appear on the playing field during the scheduled game on the afternoon of October 18, 1969, wearing black armbands in protest-demonstration to certain claimed religious beliefs of the Mormon Church and Brigham Young University, that the State of Wyoming, through the University of Wyoming and its governing officials, would be in violation of the mandate requiring complete neutrality relating to religion and nonreligion and in violation of the principle of separation of Church and State; the Board further found that the football coaching rule was imposed for disciplinary purposes looking to the unity of the football team and that the Plaintiffs had been well aware and had full knowledge of the existence of the coaching rule prohibiting members of the University of Wyoming football team from participating in demonstrations and protests; the original Plaintiffs, including the only Plaintiff appearing herein, Melvin R. Hamilton, received and accepted the benefits of their athletic scholarships to attend the University of Wyoming and that at no time did any of the original Plaintiffs object or protest in relationship to the aforesaid rule.

13. That at the time the Board of Trustees sustained Coach Eaton's dismissal of the Plaintiffs from the football team, the Board of Trustees further directed that the athletic scholarship of Melvin R. Hamilton as well as the scholarships of the remaining Plaintiffs remain in full force and effect, subject to later review; that there is no evidence or proof that either Melvin R. Hamilton or any of the remaining Plaintiffs were in anywise denied scholarship or grants-in-aid benefits from the University for the purpose of continuing their education, nor is there any proof that threats were made by the University of Wyoming or its governing officials to so deny such benefits to any of the Plaintiffs.

14. That, taking all of the evidence and facts adduced by the parties into consideration, the Court finds that there is no merit in the contention raised by the Plaintiffs in their complaint filed herein that one of the purposes of the black armband display was that of protesting against the alleged cheap shots and name-calling charged to members of the Brigham Young University football team; on the contrary, the Court finds that such allegation is without merit and that the sole and only purpose in the armband display was that of protesting against alleged religious beliefs of the Church of Jesus Christ of Latter-Day Saints, commonly known as the Mormon Church, and Brigham Young University, which the Plaintiffs considered one and the same, and the Court further finds that each of the Plaintiff football players refused to participate in the football game with Brigham Young University as members of the football team of the University of Wyoming unless they were permitted to demonstrate against the religious beliefs of the Mormon Church by wearing black armbands upon the playing field.

15. That, taking all of the evidence and facts adduced by the parties into consideration, the Court finds that each of the Plaintiffs refused to play football

as a member of the University of Wyoming football team unless and until the Defendant, Lloyd Eaton, was removed from his position as Head Football Coach of the University of Wyoming.

16. That if any of the remaining Plaintiffs were held by this Court to be entitled to reinstatement as members of the University of Wyoming football team, the Plaintiffs, and each of them, based on the evidence before this Court, would be ineligible to remain upon said team as members thereof under the rules of the University of Wyoming, the Western Athletic Conference, and the National Collegiate Athletic Association.

## CONCLUSIONS OF LAW

Thereupon, this court, upon consideration of the whole of the evidence, pleadings, and all other matters contained in this file, including arguments of counsel, finds that the action should be dismissed on the grounds and for the following reasons:

■ 1. The Plaintiffs were dismissed from the University of Wyoming football team following a full and complete emergency-hearing conducted and held by the highest governing body of the University of Wyoming, the Board of Trustees, following notice and opportunity for hearing. The action and order of dismissal by the Board of Trustees of the University of Wyoming was not predicated upon the existence or non-existence of any football coaching rule, but rather upon representations and facts presented and considered by the Board relating to the dispute involving the wearing of black armbands by the Plaintiffs. The manner in which the emergency-hearing was conducted by the Board of Trustees afforded procedural due process to all of the interested and affected parties, and was fundamentally fair in the light of the total circumstances of this case. (Sigma Chi Fraternity v. Regents of the University of Colorado, D.C.Colo., 258 F.Supp. 515).

■ 2. The Plaintiffs did not complain that they were not given a fair hearing at the time they presented their case to the University of Wyoming Board of Trustees, nor was such a complaint raised in the original proceeding before this Court. It may not therefore be raised now.

■ 3. The coaching rule of the Defendant, Lloyd Eaton, which prohibited demonstrations upon the athletic playing field in protest of the religious beliefs of others was not arbitrary or capricious and at no time prior to October 17, 1969, did any of the Plaintiffs object or protest or indicate their disapproval of the football coaching rule.

■ 4. The Plaintiffs' complaint and claim for relief is insubstantial and the Plaintiffs, and each of them, have failed to sustain by the greater weight of the evidence the allegations of their complaint. The determinative constitutional issue involved herein compelled the Defendants, as officers and agents of the University of Wyoming and the State of Wyoming, not to permit or allow the Plaintiffs, under the guise of First Amendment rights of freedom of speech, to undertake a protest-demonstration against claimed religious beliefs of the Mormon Church and Brigham Young University, which is owned and operated by said church, during an intercollegiate football game upon the playing field, which is a tax-supported facility of the State of Wyoming. That had the Defendants, as governing officials of the University of Wyoming, an agency of the State of Wyoming acceded to the demands of the Plaintiffs, such action would have been violative of the First Amendment of the United States Constitution prohibiting the establishment of religion, mandating upon the states the principle of separation of Church and State and the requirement of complete neutrality. Such protest would have been further violative of Article 7, Section 12 of the Wyoming Constitution directing that no sectarian tenets or doctrine shall be taught or favored in any public school or institution, and Article 21, Section 25 of the Wyoming Constitution which

guarantees perfect toleration of religious sentiment, and provides that no inhabitant of the State of Wyoming shall ever be molested in person or property on account of his or her mode of religious worship, and Article 1, Section 18 of the Wyoming Constitution which guarantees the free exercise and enjoyment of religious profession and worship without discrimination or preference. The Court further finds that the neutrality and the separation of Church and State principle which requires that the wall be maintained and kept high has been fully enunciated and is controlling in relationship to the facts of this case, rendering the Plaintiffs' complaint insubstantial and without merit under decisions rendered by the United States Supreme Court. Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed. 228; Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601; McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844; Everson v. Board of Education, 330 U.S. 1, 91 L.Ed. 711, 67 S.Ct. 504, 168 A.L.R. 1392; Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954; Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982.

5. That this action is not properly a class action, and the Plaintiffs have failed to adduce sufficient evidence to justify it as a class action under Rule 23(c) of the Federal Rules of Civil Procedure.

6. Tinker v. Des Moines, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 dealt with students wearing black armbands on the school premises in opposition to the Vietnam War, a governmental or political activity, within the prime zone of protected areas of free speech; the armband display insisted upon by the Plaintiffs in this case, to be worn upon the playing field in Memorial Stadium, a tax-supported facility of the State of Wyoming, during a scheduled intercollegiate football game, specifically constituting a protest against alleged religious beliefs or tenets of the Mormon Church, thereby constituting symbolic speech expression by the 14 Plaintiff football players, could not be constitutionally permitted or allowed by the Defendant State officers of the State of Wyoming, in keeping with the principle of complete neutrality, and in compliance with the Wyoming constitutional guarantee that no person shall be molested in his religious beliefs.

7. That the actions taken by the Defendants, as governing officials of the University of Wyoming, on behalf of the State of Wyoming, in denying the Plaintiffs the right to wear the black armbands on the playing field in Memorial Stadium during the scheduled intercollegiate football game between the University of Wyoming and Brigham Young University on the afternoon of October 18, 1969, was not predicated upon the likelihood of disruption, although such a demonstration might have tended to create disruption. The Court finds that the proof of likelihood of disruption has no bearing upon the actions of the Defendants in this case and is not a requisite for the action taken in light of the overwhelming showing of constitutionally valid reasons, i. e., the mandate of complete neutrality by the State of Wyoming in relation to religious matters, churches and beliefs, and the Wyoming constitutional mandate guaranteeing that no person shall be molested in his or her religious beliefs.

8. That when each of the Plaintiffs appeared before Coach Eaton and other members of the coaching staff in the fieldhouse on the morning of October 17, 1969, dressed in civilian clothing, each wearing the black armband, they did so as members of the Black Student Alliance, an organization on the campus of the University of Wyoming, and that they appeared in conjunction with the protest-demonstration suggested, announced and proclaimed by that organization against the Mormon Church and Brigham Young University, that said organization had insisted, among other

things, that black armbands be worn during the scheduled football game between the University of Wyoming and Brigham Young University in specific protest-demonstration of certain alleged religious beliefs of the Mormon Church; that both at the time of the confrontation between the Plaintiffs and Defendant Coach Eaton on the morning of October 17, 1969, and at all times thereafter, during the conference with President William D. Carlson and his administrative staff, and the emergency-hearing before the Board of Trustees of the University of Wyoming, the Plaintiffs had determined and insisted upon the right to wear the black armbands over the University of Wyoming football uniform during the scheduled football game between the University of Wyoming and Brigham Young University on the afternoon of October 18, 1969, in specific protest to certain alleged religious beliefs of the Mormon Church; that the sole and only reason for wearing of the black armbands at all times was that of protest against alleged religious beliefs of the Mormon Church and did not, in anywise, relate to alleged cheap shots and name-calling related to members of the Brigham Young University football team.

9. The fullest realization of true religious liberty requires that government neither engage in nor compel religious practices, that it effect no favoritism among sects or between religion and non-religion, and that it work deterrence of no religious belief. Abington School Dist. v. Schempp, 374 U.S. 203, 305, 83 S.Ct. 1560 (1963). Accord: Walz v. Tax Commisson of the City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L. Ed.2d 697 (1970).

10. The rights of the Plaintiffs to freedom of speech as guaranteed by the First Amendment cannot be held paramount to the rights of others to practice their religion free from state-supported protest since "individual liberties cannot be left completely uncontrolled to clash with similarly asserted liberties of several thousand others." King v. Saddleback Junior College, 9th Cir., 445 F.2d 932.

11. Based upon the evidence before the Court, it appears that under the rules of the Western Athletic Conference, Part Three, Section 300, and Article 4, Section 1 of the Bylaws of the National Collegiate Athletic Association, which together define the eligibility of football players at the University of Wyoming, that the Plaintiff Melvin R. Hamilton, and the ten other remaining Plaintiffs are presently ineligible for reinstatement on the University of Wyoming football team.

12. From what I have said I hold that the complaint, together with the cause, should be dismissed with prejudice for the reason that the Plaintiffs have failed to sustain by a preponderance of the evidence the material allegations of their complaint.

## JUDGMENT OF DISMISSAL

The above entitled matter having come on regularly for hearing before the Court, Melvin R. Hamilton, one of the remaining plaintiffs, appearing in person and by his attorney Weston W. Reeves of the firm of Graves and Smyth, and the defendants Lloyd Eaton, Clifford E. "Jerry" Hollon, Alfred M. Pence and Dr. William D. Carlson, as President of the University of Wyoming, appearing in person and by Clarence A. Brimmer, Attorney General for the State of Wyoming, William Kallal and Fred Reed, Assistant Attorneys General, and the Court having heard the evidence adduced for and on behalf of the plaintiffs and the evidence offered in opposition thereto, and having taken said matter under advisement and having prepared and filed herein its Findings of Fact and Conclusions of Law, finding generally for the defendants and against the plaintiffs, now, therefore, it is

Ordered that the complaint, together with the cause, be, and the same is hereby, dismissed with prejudice, the parties to pay their own costs.