Jean P. BISCAR, Appellant
(Plaintiff below),

v.

The UNIVERSITY OF WYOMING BOARD OF TRUSTEES, Gordon H. Brodrick, Christian Bunning, W. R. Gillaspie, Paul O. Hines, Leo P. McCue, Jr., Cameon McEwan, Patrick J. Quealy, Carlin Smith, Joseph B. Sullivan, Virgil L. Thorpe, H. A. True, Jr., Willard V. Wilson, in their official capacity; Dr. William D. Carlson, in his official capacity; or such persons as may have been substituted as parties defendant as a member of the Board of Trustees, or President of the University and serving in such official capacity; Robert McCulloch, W. T. Grandy, Jr., and E. Gerald Meyer, Individually, Appellees (Defendants below).

No. 5180.

Supreme Court of Wyoming.

Jan. 23, 1980.

C. M. Aron and Richard A. Hennig of Aron & Hennig, Laramie, for appellant.

Joseph R. Geraud, Sp. Asst. Atty. Gen., Laramie, and William R. Jones and Karen Maurer, Sp. Asst. Attys. Gen., Wheatland, for appellees.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to Article 5, Section 5,

PER CURIAM.

From 1969 until 1975, Jean Biscar, plaintiff-appellant, was employed as an assistant professor at the University of Wyoming. The University interprets the employment as consisting of a series of temporary appointments, while Mr. Biscar contends the employment was represented to him as a "tenure-track"[1] appointment. Biscar was terminated without a formal tenure hearing, whereupon he filed suit in a state district court against defendants-appellees, members of the University's Board of Trustees, in their official capacities, and the University President in his official capacity. Biscar asked back pay, reinstatement and consideration for tenure. He further alleged the existence of an employment contract with respect to which he sought specific performance, and lastly he charged the defendants with violations of his federal rights under the Fourteenth Amendment, as interpreted in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and similar cases.

Appellees responded with a motion to dismiss on the ground that they enjoyed sovereign immunity. Decision on this motion was delayed pending a trial on the merits, after which judgment was entered in favor of the appellees on both the merits and the motion to dismiss.

The claim of sovereign immunity "raises the threshold question, of which disposal must be made before we can proceed further into this inquiry." *Retail Clerks Local 187 v. University of Wyoming*, Wyo., 531 P.2d 884, 886 (1975).

We will affirm the dismissal by the district court on the grounds of sovereign immunity and will, therefore, not undertake a consideration of any other issues. *Retail Clerks Local 187, supra.*

### Sovereign Immunity

In *Worthington v. State*, Wyo., 598 P.2d 796 (1979), this court was asked but refused to abolish the doctrine of state sovereign immunity, holding that the state may not be sued without consent. We said in *Worthington*:

"There are few, if any, precedents or rules that have been recognized longer or followed with greater fidelity than the rule that was set out in the case of *Hjorth Royalty Company v. Trustees of University*, 30 Wyo. 309, 222 P. 9 (1924), which held that Art. 1, § 8, Wyoming Constitution, is not self-executing; that no suit can be maintained against the State until the legislature makes provision for such filing; and, that absent such consent, no suit or claim could be made against the State. This was followed in several cases down through and including the case of *Retail Clerks Local 187 AFL-CIO v. University of Wyoming*, supra; and see further the following cases which give recognition to this rule: *Utah Construction Company v. State Highway Commission*, 45 Wyo. 403, 19 P.2d 951 (1933); *Price v. State Highway Commission*, 62 Wyo. 385, 167 P.2d 309, 312 (1946); *Harrison v. Wyoming Liquor Commission*, 63 Wyo. 13, 177 P.2d 397, 402 (1947); *Ellis v. Wyoming Game and Fish Commission*, 74 Wyo. 226, 229, 286 P.2d 597 (1955); and *Hamblin v. Arzy*, Wyo., 472 P.2d 933, 934 (1970). . . ." 598 P.2d at 801.

■ The University of Wyoming, together with its officers, as they undertake to act in their official capacities, enjoy sovereign immunity since a suit against the University or these officers is a suit against the state. *Retail Clerks Local 187*, supra, citing *Williams v. Eaton*, 10 Cir., 443 F.2d 422, on remand D.C., 333 F.Supp. 107, affirmed 10 Cir., 468 F.2d 1079, and *Hjorth Royalty Co.*, supra. See, also as to the trustees' immunity only, *Awe v. University of Wyoming*, Wyo., 534 P.2d 97 (1975). Accordingly, the

Wyoming Constitution, and Section 5–1–106(f), W.S.1977, by order of this court entered on January 1, 1979.

1. "Tenure-track" may be loosely described as an appointment, which, under the rules applicable to such matters, leads to a tenured position.

only question which remains is whether there is some exception to the doctrine of sovereign immunity which will permit a suit against the state without its consent.

Appellant would have us distinguish between suits in contract and suits in tort and begs that *Worthington*, supra, and authorities there relied upon, supra, only require that we enforce the doctrine of state sovereign immunity upon suits in tort. He would further urge that even if we were to hold there to be prohibitions against suit on contracts, without the consent of the state, they do not reach to foreclose such actions where the subject matter of the contract calls upon the state to discharge a proprietary function. Lastly, of course, Mr. Biscar's position is that the contracts of employment, subject of this action, may be described as concerning themselves with a proprietary function insofar as the state is concerned. Mr. Biscar cites two Wyoming cases which indicate that the state may be sued without its consent when it engages in a proprietary function.

In *National Surety Co. v. Morris*, 34 Wyo. 134, 241 P. 1063, 1067 (1925), the court said that the state loses its sovereign immunity when it

". . . places itself in the same class and on the same footing with private individuals in connection with its property rights. . . ."

In *Harrison v. Wyoming Liquor Commission*, 63 Wyo. 13, 177 P.2d 397, 402 (1947), when considering the question of whether the State Liquor Commission (the alter ego of the state) could be made liable to suit without consent of the state, we said:

"The ultimate test of liability or non-liability to suit in this case must then be found in the answer to the question whether the Wyoming Liquor Commission was or was not an agency engaged in a governmental function. . . ."

In *National Surety Co.*, supra, it was the court's judgment that the state, as a bank depositor earning interest, engages in a proprietary function when it places itself on an equal footing with other bank depositors. In *Harrison*, the court held that the liquor commission, in buying and selling liquor, was engaged in a governmental function; this conclusion was based in part on Section 10 of Article 19 of the Wyoming Constitution, providing for the sale of alcohol under such regulations as the legislature may prescribe. *Harrison*, supra, at 177 P.2d 404.

Standards for testing whether, under any particular set of facts, the state is engaged in a governmental or proprietary function are not easily come by. It has been said that if the activity is concerned with the health and welfare of the public at large, then the activity is governmental. *Bondurant v. Board of Trustees of Memorial Hospital*, Wyo., 354 P.2d 219 (1960); and *Villalpando v. City of Cheyenne*, 51 Wyo. 300, 65 P.2d 1109 (1939).

Where the activity has been undertaken at the direction of the legislature—or involves legislative or judicial discretion—it has been held to be governmental. *Wickstrom v. City of Laramie*, 37 Wyo. 389, 262 P. 22 (1927); and *Savage v. Town of Lander*, 77 Wyo. 157, 309 P.2d 152 (1957).

Where the activity has historically been carried on by a private corporation (*Ramirez v. City of Cheyenne*, 34 Wyo. 67, 241 P. 710 (1925); and *Town of Pine Bluffs v. State Board of Equalization*, 79 Wyo. 262, 333 P.2d 700 (1958)), or if it generates fees (*Town of Douglas v. York, Wyo.*, 445 P.2d 760 (1968); and *Ramirez v. City of Cheyenne*, supra; cf. *Town of Pine Bluffs v. State Board of Education*, supra), it is proprietary.

According to the above standards—or any others of which we have knowledge—it seems impossible to mount a reasonable argument to the effect that the President and Board of Trustees of the University of Wyoming are not engaged in a governmental function when they undertake contract negotiations with those seeking employment as instructors of the students of that school. Sections 15–17 of Article 7 of the Wyoming Constitution provide for the University of Wyoming. Section 16 of Article 7 states:

". . . [I]n order that the instruction furnished may be as nearly free as possible, any amount in addition to the income from its grants of land and other sources . . . necessary to its support and maintenance . . . shall be raised by taxation . . . ."

In hiring professors to provide the instruction spoken of, the officials of the University are engaging in a constitutionally mandated governmental function and this function bears no resemblance to the proprietary activities contemplated by the facts and the law of *National Surety Co.*, supra. Mr. Biscar's suit on the contract of instructor employment was, therefore, a suit against the state concerning a governmental function. Against such action, the appellees were and are immune.

Mr. Biscar further contends that since the state is granted the power to enter into contracts and sue for breach thereof, the legislature, by implication, grants the other contracting parties a corollary right to sue for breach of contract. In *Harrison*, supra, we held to the contrary. In that opinion we said:

". . . The state may sue; it has an inherent power to seek to enforce its rights and its interests in the courts . . . , but it does not thereby surrender its immunity as a sovereign from suit by others. 'The right of the state to sue in its own courts has always stood side by side with its right not to be sued. . . .' " 177 P.2d at 399.

Because the district court was without jurisdiction to consider the merits of the case, we will express no judgment on the merits. *Retail Clerks Local 187*, supra at p. 887, citing *Brimmer v. Thomson*, Wyo., 521 P.2d 574, 579 (1974). That portion of the judgment on the merits must be vacated. *Musgrove v. Georgia Railroad & Banking Co.*, 204 Ga. 139, 49 S.E.2d 26, 38 (1948), appeal dismissed 335 U.S. 900, 69 S.Ct. 407, 93 L.Ed. 435 (1949). That portion of the judgment in favor of the appellees on the grounds of sovereign immunity is affirmed.

Affirmed.

ROSE, Justice, specially concurring.

I join the court with the following reservations, which are personal to my position and not a part of the Per Curiam opinion:

It has been said that once a dissenting justice has had his day,

". . . [h]e should . . . live with the law as it has been stated . . . abiding the time when he may win over the majority, but he should regard dearly enough the stability of the law that governs all the courts in the state not to renew the rataplan of his dissent. . . ." Traynor (14 U.Chi.L.Rev. 219).

It is within the boundaries of this thought that I join the Per Curiam. While recognizing the opinion to represent the present state of the law in Wyoming, I retire at this time from an exhaustive dissent to rest for the battle to be waged at another and more propitious time. See my dissent in *Worthington v. State*, Wyo., 598 P.2d 796 (1979), at page 809; my concurring opinion in *Oroz v. Board of County Commissioners*, Wyo., 575 P.2d 1155, 1161 (1978); and my views expressed in *Jivelekas v. City of Worland*, Wyo., 546 P.2d 419 (1976).