Michael KAUTZA and Kurt Babcock, co-owners of Putt 'N Around Miniature Golf Course, Appellants (Plaintiffs),

v.

CITY OF CODY; Mayor Dorse Miller, Jr.; Glenn Livingston, Harry McNeil, Rodney Mason, Ray Mentock, Willard Minske and Rick Wilder, as Councilmen and Individually; and Councilmen Lowell Ray Anderson, Glenn Livingston, Rodney Mason, Ray Mentock, Willard Minske, Gordon Willford, Richard Roemmich and Steve Hollingsworth, Individually, and Does 1–100, Appellees (Defendants).

No. 90–248.

Supreme Court of Wyoming.

June 7, 1991.

Donna S. Sears, argued, Sears Law Offices, Lander, for appellants.

Jeffrey A. Donnell, argued, Worland, for appellees.

Richard Roemmich, pro se.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

During the year 1976, the City of Cody, Wyoming constructed a miniature golf course that it thereafter operated through a lessee. In 1987, 11 years later, appellants, Michael Kautza and Kurt Babcock, constructed and began operating a second miniature golf course in Cody. Appellants then claimed the City competed unfairly with them. They commenced a lawsuit against the City and others, which was dismissed pursuant to W.R.C.P. 12(b)(6) for failure to state a claim upon which relief could be granted.

We affirm.

Appellants raise the following issues:

"I. Did the trial court err in dismissing appellants' complaint with prejudice in regards to the lease contractual service agreement between the City of Cody and Richard Roemmich?

"II. Did the trial court err in dismissing appellants' complaint with prejudice since the City is subject to the provisions of W.S. Section 40-4-107 for engaging in unfair competition?

"III. Did the trial court err in dismissing appellants' complaint with prejudice and not preserving appellants' federal claims under 42 U.S.C. Section 1983?"

For purposes of review of the order of dismissal, we accept the facts alleged in the complaint as true. *Gates v. Richardson*, 719 P.2d 193, 194 (Wyo.1986). Our statement of fact comes directly from the appellants' complaint.

The City of Cody miniature golf course has been in existence since 1976. The course had been leased to an operator on a year-to-year basis until 1987 when the City entered into a seven-year lease with appellee Richard Roemmich. Rent under the 1987 lease was 20 percent of the gross income from the miniature golf course. In 1990, the City and Roemmich made a new lease for a four-year term that required Roemmich to pay 45.5 percent of the gross income as rent. The new lease was entered into because the City had improved and rebuilt the miniature golf course. Under both leases, the City paid utility expenses. In 1987 and 1988, 18 holes of

miniature golf at the City course cost $1.00. The fee increased to $1.50 in 1989.

Appellants opened the Putt 'N Around Miniature Golf Course in Cody in June of 1987. Putt 'N Around initially charged $3.00 to play 18 holes of golf, but in its first year of operation lowered the fee to $2.50 and then to $2.00. In 1988, the fee was increased to $2.50 for 18 holes; and in 1989, the charge was $2.50 to play miniature golf all day.

Kautza complained to the Cody city council on December 5, 1988, that the City charged "abnormally low rates" to play on the city course. Kautza filed suit against the City on June 4, 1990, naming the City, its elected officials, the city parks director, and the lessee of the golf course as defendants. The ten counts contained in the Kautza complaint alleged that defendants had violated the plaintiff's constitutional due process rights under the United States and Wyoming constitutions; that defendants caused the plaintiffs severe anguish and emotional distress; defendants engaged in unfair trade practices in violation of W.S. 40–4–107; that defendants had formed a monopoly; that defendants entered into a conspiracy to restrain trade; that defendants unfairly operated the miniature golf course at a loss to the plaintiff's detriment; that defendants denied the plaintiffs equal protection; and that defendants had violated W.S. 15–9–101 to 15–9–137 (concerning urban renewal), W.S. 15–6–101 to 15–6–609 (concerning local improvements), and W.S. 15–1–701 to 15–1–710 (concerning public improvements).

Defendants filed a motion to dismiss the complaint upon the grounds that it failed to state a claim upon which relief could be granted pursuant to W.R.C.P. 12(b)(6). The trial court granted the motion. In a decision letter, the court found that the City could lawfully operate a miniature golf course and owed appellants no duty not to compete.

■ Dismissal is a drastic remedy and should be granted sparingly. *Paravecchio v. Memorial Hospital*, 742 P.2d 1276, 1283 (Wyo.1987), *cert. denied* 485 U.S. 915, 108 S.Ct. 1088, 99 L.Ed.2d 249 (1988). We will sustain a dismissal pursuant to W.R.C.P. 12(b)(6) only if the complaint shows on its face that the plaintiff is not entitled to relief. 742 P.2d at 1283. In reviewing the motion, we consider the facts alleged in the complaint as admitted and view them in the light most favorable to plaintiff. *Id.*

Although the appellants in their complaint alleged their cause of action in ten counts, the dismissal is challenged in their brief on three issues, and we address those issues in the order presented.

The first issue concerns the length of the contract between the City and Roemmich. Appellants take a two-sided approach to their contract validity issue. They look first to the governmental-proprietary function distinction in arguing the invalidity of the contract; then, alternatively, they rely upon the rule for determining the voidability of governmental long-term contracts we adopted in *Mariano & Associates v. Board of Co. Comm'rs*, 737 P.2d 323 (Wyo.1987).

This court has recognized that governmental entities perform both governmental and proprietary functions. *Biscar v. University of Wyoming Board of Trustees*, 605 P.2d 374, 376 (Wyo.1980). A governmental function is one

> "[w]here the activity has been undertaken at the direction of the legislature— or involves legislative or judicial discretion * * *." *Id.*

Alternatively, a propriety function is one

> "[w]here the activity has historically been carried on by a private corporation, or * * * it generates fees." *Id.* (citations omitted).

The distinction between these types of functions was discussed in *Biscar* for the purpose of determining whether the university trustees had immunity in a suit over a teacher's contract. *Id.* at 377.

■ We have never applied the distinction between governmental and proprietary functions to determine the validity of a governmental contract that extended beyond the term of the governing body that entered into the contract. *See* Note, *Contract Law—Local Governments Can Void Long Term Contracts*, 23 Land & Water

L.Rev. 567, 569–71 (1988). Courts relying upon this distinction generally enforce those contracts involving proprietary functions but declare void those contracts concerning governmental functions that extend beyond a term of the governing body. *Id.* at 569, n. 22. The appellants argue that the lease-contract for the miniature golf course is proprietary and, thus, the contract void. Appellants are simply incorrect in their claim. If the contract involves proprietary functions, it is under the law valid and enforceable. Thus, if we accept appellants' contention that this is a proprietary contract, their reliance on the governmental-proprietary distinction is misplaced and does nothing to advance their cause.

■ However, in *Mariano*, we found "no reasoned justification for the governmental-proprietary differential as the dispositive test." 737 P.2d at 327. Instead, we adopted the following rule:

"[A]n agreement extending beyond the term of the contracting authority * * * may be voidable by the government or void upon attack by a third party if, under the facts and circumstances, the agreement is not reasonably necessary or of a definable advantage to the city or governmental body." 737 P.2d at 331–32.

The burden of proof to show the lack of necessity or advantage lies with the party attacking the validity of the contract. 737 P.2d at 330.

■ Appellants' entire complaint lacks any allegation that the lease-contract is unnecessary, nor does it contain an allegation that it is not of advantage to the City. The most we can discern from the allegations in the complaint is appellants' contention that the contract is detrimental to them. That contention, however, is insufficient to mount a third-party challenge to the validity of the contract. Thus, appellants failed to state a claim for which relief could be granted on this issue.

■ In their second issue, appellants contend that the City of Cody was subject to the provisions of the W.S. 40-4-107. That statute states in part:

"(a) It shall be unlawful for *any person, partnership, firm, corporation, joint-stock company, or other association engaged in business within this state,* to sell, offer for sale or advertise for sale any article or product, at less than the cost thereof to such vendor, or give, offer to give or advertise the intent to give away any article or product for the purpose of injuring competitors and destroying competition." (emphasis added)

The City does not fit within the above-named entities listed in the statute. This statute, therefore, has no application to the City of Cody.

■ It is within the powers granted the City of Cody to establish and regulate the operation of parks. W.S. 15-1-103(xxii). Included within this power is the discretion to lease its recreational facilities to private parties, "provided the public is not excluded and the public use * * * is promoted by the arrangement." *Lassiter v. Town of Oxford*, 234 F.2d 217, 218 (4th Cir.1956). *Cf. Simkins v. City of Greensboro*, 149 F.Supp. 562 (D.C.N.C.), *aff'd* 246 F.2d 425 (4th Cir.1957) (City may not lease publicly-owned golf course to private club to operate for the purpose of denying blacks the right to use the golf course). *See also* 10 E. McQuillin, *The Law of Municipal Corporations* § 28.53 (3d ed. 1990). There is no claim here that the City lease involved discriminatory or other questionable practices. It appears only that the City owns and leases its miniature golf course for the benefit of its citizens, and by doing so it performs a legitimate municipal function. We find no other facts alleged to conclude that the City is doing other than that specifically authorized by statute in its ownership and leasing of a golf course. Municipal golf courses are too common and accepted for us to so hold otherwise.

The final issue appellants raise involves the dismissal of their claims of denial of their constitutional rights pursuant to 42 U.S.C. § 1983. Their complaint alleges that they were denied their right to due process because the City competed with their golf course, diverting profits from

them, and that they were denied equal protection.

■ Under the 14th Amendment of the United States Constitution and Art. 1, § 6 of the Wyoming Constitution, the state cannot deprive a citizen of his property without due process of law. The "property" which appellants alleged as being taken were possible profits to be realized from the operation of their miniature golf course. The complaint alleges that appellants' expectancy of a profit was defeated by the operation of a similar venture under control of the City. The hope to earn a profit amounts to nothing more than a "mere unilateral expectation" and does not rise to a property interest to which due process rights attach. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980). *See also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1055, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984) (distinguishing between property interest in a "reasonable investment-backed expectation" and "mere unilateral expectation"). An interest in avoiding competition also is not a property interest to which due process rights attach. *Izaak Walton League v. Marsh*, 655 F.2d 346, 361, 67 A.L.R.Fed. 1 (D.C.Cir.1981). It is not stated in the complaint whether the appellants' course continued to operate after the complaint was filed nor that appellants lost any other property—real, personal or intangible—connected with the golf course. Appellants' complaint failed to allege that the City deprived them of a protected property interest.

■ We also fail to find any equal protection claim sufficiently stated in the appellants' complaint. An equal protection violation requires a showing that the state has made a classification that treats similarly situated people differently and that the classification is not rationally related to a legitimate state end. *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). When a "suspect class" or a "fundamental right" is involved in the classification, we apply a strict scrutiny test which requires a showing that the classification is necessary to achieve a compelling state interest. *Washakie Co. School District No. 1 v. Herschler*, 606 P.2d 310, 333 (Wyo.1980), *cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980); *Clements*, 457 U.S. at 963, 102 S.Ct. at 2843. Appellants' complaint makes a blanket statement that their equal protection rights were denied. The complaint fails to allege any type of classification, suspect or otherwise, nor any type of fundamental right involved in the City's operation of the golf course.

Affirmed.