TOWN OF GLENROCK, a Municipal Corporation, ·
*Plaintiff and Respondent*

vs.

CHICAGO & NORTH WESTERN RAILWAY COMPANY, a Corporation,
*Defendant and Appellant*

TOWN OF GLENROCK, a Municipal Corporation
*Plaintiff and Appellant*

vs.

CHICAGO & NORTH WESTERN RAILWAY COMPANY, a Corporation,
*Defendant and Respondent.*

(Nos. 2636 and 2637; February 15, 1955; 279 Pac. (2d) 894)

386

For the defendant and appellant in Case No. 2636 and defendant and respondent in Case No. 2637, the causes were submitted on the brief of Joseph Garst of Douglas, Wyoming, R. D. Neely and H. B. Otis of Omaha, Nebraska and Nye F. Morehouse of Chicago; oral argument by Mr. Neely and Mr. Morehouse.

For the plaintiff and respondent in Case No. 2636 and plaintiff and appellant in Case No. 2637, the causes were submitted on the brief and oral argument of William P. Dixon of Glenrock, Wyoming.

388

## OPINION

Harnsberger, Justice

The Town of Glenrock brought action against several hundred defendants seeking to quiet its title to certain lots, streets, alleys and various other strips and parcels of land lying within its dedicated borders. Included were the lands comprising the right of way of the Chicago & North Western Railway Company, a Wisconsin corporation authorized to do business in this state, and consequently this company was also named as one of the defendants. The area of this right of way is a part of the lands which the plaintiff had assumed to lease to an oil company for oil and gas purposes, and the obvious purpose of the action against the defendant railroad company was to establish in the town a title to the mineral rights underlying the right of way. The petition alleged the plaintiff to be the owner in possession of the lands and claimed for the town a title in fee simple, praying that such fee simple title be adjudged

it; that the defendant railway company be held to have no interest or estate, and that it be enjoined and debarred from asserting any claim, right, title or interest whatsoever in the lands involved. The railway company denied these allegations, and by cross-petition pleaded that it was in the actual possession of the lands and that it had title in fee thereto which it had acquired by an adverse possession of more than ten years. The court found the plaintiff had no title whatsoever; that the defendant had the exclusive right of possession by virtue of an easement granted it by the government, for railroad right of way purposes and all other purposes incident thereto, but that the defendant railway company does not have a fee simple estate in the land. The court's judgment decreed that the plaintiff take nothing by its action, and that the railway company has the easement indicated by the finding, which was declared to be superior and paramount in every way to all claims of the plaintiff. Both parties appealed.

Plaintiff's entire evidence consisted of (1) a stipulation that the street on each side of the right of way was dedicated by the original patentee or those who derived their right and title by mesne or direct conveyance from such patentee and that such dedicatory plats might be received in evidence as conclusive proof of the right of the dedicators to execute and record the same, and (2) dedicatory plats numbered 2 through 7, some showing streets on either side and paralleling the right of way where the plat was traversed by it and the others where not so traversed showing the street paralleling and adjoining the right of way. It might also be noted that in at least one instance the platting showed a street to overlap the right of way by some 30 feet.

The evidence of the defendant and cross-petitioning railway company, consisted of a stipulation which in

substance recited, that the railway company's predecessors in interest had made the necessary map filing to obtain the benefits of the March 3, 1875 Act of Congress, 43 USCA. Secs. 934-939; that the railroad to Glenrock was completed in 1887 and on to Casper in 1888, and has been in continual operation ever since; that the filings were approved February 6, 1886 and November 29, 1886; that the right of way covered by the map filings includes land laying within the city limits of the plaintiff town; that it succeeded to the interest of the original holder of the right of way; that on March 20, 1889, there was issued a coal certificate patent to one Dorsey for a tract of land (which included the disputed right of way); that the railway has paid all taxes on the right of way from the commencement of the railroad operation, and gave an accurate description of the right of way. Additionally the railway company placed in evidence photostat copies of records showing the filing to which reference has been made; a copy of the Dorsey patent; a blueprint prepared by its engineer, showing the right of way within the town limits; another blueprint similarly prepared, showing the right of way inside the town limits together with building and other improvements indicated thereon. Further evidence in behalf of the railroad company consisted of the testimonies of several witnesses, tending to show that located upon the right of way there were loading docks, a water well, several underground pipe line crossings laid pursuant to license from the railway company; signs carrying the words "C. & N. W. Property"; a coal tipple and possibly some other improvements, as well as there being granted by the railway company a number of leases for use of parts of the right of way by various concerns in their businesses of lumber, mining, milling, etc., and that there had been mining, rodeos, horse

breaking and livestock branding conducted on the premises.

Although each of the stipulations here mentioned purport to be the stipulation of "all other parties claiming title to the railroad right of way", these were, of course, only binding upon the parties signing the same, which are the plaintiff and the defendant railway company.

It is also noted that there is no evidence to show when the buildings and improvements were placed on the right of way; when the several activities took place or the date of the leases or licenses mentioned, except possibly in a couple of instances where dates in 1917 and 1920 for town water mains and sewer are specified.

The historical facts disclosed by this evidence are simple.

The relevant substance of the March 3, 1875 Act of Congress, granted to a railroad company a right of way of 100 feet on either side of the center line of a route established over land of the public domain upon the filing of profile maps therefor with, and receiving the approval of, the Secretary of the Interior. The predecessors in interest of the defendant railway company complied with those requirements and received the necessary approvals of the secretary on February 6, 1886 and November 29, 1886.

On March 20, 1889 the United States government issued to one Dorsey a patent called a "coal certificate", to certain lands which were traversed by the right of way. This patentee and his grantees thereafter subdivided portions of these lands which were traversed in part by the right of way, and caused plats to be made of the subdivisions and recorded them in accordance with the provisions of Sections 29-1101, 29-1102, 29-1103, Wyoming Compiled Statutes, 1945.

The defendant railway company, however, does not base its claim of title to the lands within the right of way upon the grant thus secured from the United States, nor by its having possessed, used and occupied such lands thereunder. It claims a title in fee acquired by an adverse possession occurring through its use of the lands for purposes, which it asserts, are other than purposes incident to the operation of a railroad.

The plaintiff town claims it acquired title in fee simple to the lands in dispute by virtue of the coal certificate patent and the dedicatory proceedings, and that such title is superior to that of the railway company. The town, however, professes no purpose to disturb the physical enjoyment of the railway company's easement. We can only interpret this as meaning that the town asserts no present right to possession and occupancy of the right of way surface, except possibly for the use of such portions of the surface as may be required for the enjoyment of subsurface values.

In considering the plaintiff's appeal, it is only necessary to examine the evidence in the record in order to ascertain that there was no error in the lower court's finding that the plaintiff had no title whatsoever.

The stipulation merely said that the persons dedicating streets on either side of the disputed right of way had the right to do so. The dedicatory plats did not purport to show the right of way as being dedicated to the town nor to the public any more than the platting of lots and blocks purported to show they were dedicated to the town or to the public. In fact the contrary appears by these plats, for the lands involved were shown as railroad right of way, which, if anything, tended to acknowledge the right of the defendant railway company and its predecessors.

Neither the stipulation nor the plats gave any substance to the plaintiff's claim of right or title of any sort to the right of way property any more than the dedication would have given the town right and title to lots and blocks shown on the plats as adjoining the streets.

The trial court's finding that the appealing railway company did not have a fee simple estate was, in effect, a finding that it had not established a title by adverse possession, as it was upon that theory that the company claimed title. Consequently, the single question presented upon the railway company's appeal is, did the court err in determining that the company had not by adverse possession acquired a title in fee to the lands in dispute. In holding as we do, that there was no such error, we need only say that we find no evidence fixing a date from which the statute of limitation may be said to have run in order to have established such adverse title.

Although the record shows the court considered the evidence, relative to uses to which the right of way had been put, insufficient to show either an abandonment of possession under the grant, or that such uses amounted to notice of an adverse possession, and although the town has not taken an appeal from that part of the decree which adjudged the railway company has an easement for railroad purposes and all other purposes incidental thereto, we do not feel that the issues required or admitted of the court's making any determination based upon the construction or interpretation of the grant under the Act of 1875.

The railway company elected to stand solely upon its asserted title by adverse possession. From statements made by the court and tacitly acquiesed in by counsel, the jurisdictional limit of the decree auth-

orized as being within the scope of the issues presented, was recognized as being one which would determine only as between themselves the respective rights of the town and the railway company. The town had no title. Consequently it makes no difference so far as the town is concerned whether the title of the railway company is under the grant, by adverse possession or has no title at all. Since the railway company's cross-petition seeks relief only against the town and those claiming under it, of which there are none, it was therefore unnecessary and hence improper to adjudicate and pass upon the nature and extent of the railway company's title, particularly with respect to a title emanating from a grant which was not the basis of its claim in the action. It follows that the decree must be vacated and modified to that extent, otherwise it is affirmed.

*Vacated and modified in part, otherwise affirmed.*

RINER, C. J. AND BLUME, J. concur.

(Nos. 2636 and 2637; March 22nd, 1955; 281 Pac. 2d. 455)

## ON PETITION FOR REHEARING

In support of the petition of Chicago & North Western Railway Company for a rehearing in Civil No. 2636 there was a brief for the defendant and appellant by Joseph Garst, Douglas, Wyoming, R. D. Neely, H. B. Otis, Omaha, Nebraska, Edgar Vanneman, Jr., and Nye F. Morehouse, Chicago, Illinois.

## OPINION ON REHEARING

HARNSBERGER, Justice

The railway company's petition for rehearing and its brief in support thereof, charges that we have misconceived undisputed evidence which is said to establish a time long in advance of the necessary period when adverse possession was asserted. Notwithstanding we felt that close attention and careful consideration had already been given to all the evidence in the record, the testimony of each witness was again examined, giving particular attention to that portion to which reference was made in the rehearing brief. We are unable to discover either directly or by just inference where any witness specified any time when the claimed adverse possession might be said to have commenced. Although counsel attempts to amplify statements of appellant's witnesses by asserting that such testimony referred to certain times or periods,

this does not serve to change the fact that the witnesses themselves did not specify or fix any such dates or times, nor were they called upon to do so. Neither in our opinion, does stipulated evidence that original occupation of the right of way was under Congressional Grant, constitute "uncontrovertible proof" or any proof at all that the railway company was claiming title in fee by adverse possession, as against the town, the only party reached by the judgment. We suggest it is not the court ,but appellants' counsel who misconceive the evidence.

The appellant also attempts to re-argue the contention that its title to the right of way was a fee title good as against "all possible interested parties" and all defendants originally named in the action. This court has previously pointed out that when the reason advanced for a rehearing is simply re-argument and repetition of counsel's views which have already received consideration, we will decline to re-travel those paths. Owl Creek Irrigation District v. Bryson, 71 Wyo. 30, 70, 80, 253 Pac. 867 258 P.2d 220, 224.

However, if counsel do not understand what was meant when we noted that —"From statements made by the court and tacitly acquiesced in by counsel, the jurisdictional limit of the decree authorized as being within the scope of the issues presented, was recognized as being one which would determine only as between themselves the respective rights of the town and the railway company", we may say that counsel will not be permitted to repudiate or withdraw from a commitment made in open court during the trial of a cause.

In the course of the trial and before rendition of judgment, the Court observed in part:

" * * * I do not know how many parties counsel says are involved in this lawsuit. We only have two of them in Court here at the present time, so I take it that the Court's decision in this matter is limited to these two litigants."

To which Mr. Neely, one of appellant's counsel, replied:

"I would think so, Your Honor."

Then the court said:

"In determining the question of ownership or title the Court's decision could not reach beyond the two parties, * * * ".

This understanding was recognized in the decree itself, which provided,—"It is specifically ordered that the names of all Defendants named in the original petition not involved in the issue herein shall be omitted from the title in this decree; * * * ".

We consider this exchange between court and counsel binding.

We also remind counsel that the railway company's cross-petition was against the plaintiff alone; that the cross-petition only alleged that plaintiff, or someone claiming under plaintiff, claimed an interest in the disputed lands adverse to the railway company, and it only alleged that plaintiff and anyone claiming under plaintiff were without right, title or interest in the lands. The single defendant claiming under the plaintiff was its lessee oil company. The trial was therefore limited solely to issues between the railway company and plaintiff.

These issues were not enlarged as the appellant claims, because plaintiff prayed in its own action against the railway company and the other defen-

dants for relief against all of the defendants *in that action.*

*Petition for rehearing denied.*

RINER, C. J. concurs.

BLUME, Justice.

I concur. Perhaps I should add a thought of my own.

Counsel for the railway company say that we should have decided the nature of its title. It would seem to me that under the facts in this case, when this court decided that the Town of Glenrock had no title to the railway right of way, that disposed of the whole case, and it was not necessary to say anything more. It made no difference whether the railway company had merely ` a possessory title, or for that matter whether it had a title at all. So if this court had undertaken to pass upon the exact nature of the title of the railway company—a title in fee by reason of adverse possession—it would have been a gratuitous undertaking on the part of the court. It would have been obiter dictum. See 21 C.J.S. 309, Section 190. Courts do at times indulge in obiter dictum, but to have done so in this case would have subserved no beneficial purpose. The situation would not have been much different if the action had originally been instituted by the railway company against the Town of Glenrock to quiet title. All that the railway company would have needed to prove would have been a possessory title. Unless the town could have shown a better title, the railway company would have prevailed. But when the possessory title in the railway company in such case would have appeared, and on the other hand no title in the town was shown, then, it would, just as here, have been a gratuitous undertaking on the part of the court to have

ascertained the exact nature of the title of the railway company.

RINER, C. J. AND HARNSBERGER, J. concur.