William G. AWE, by Ralph W. Awe, his father and next friend, et al., Appellants (Plaintiffs below),

v.

UNIVERSITY OF WYOMING et al., Appellees (Defendants below).

No. 4379.

Supreme Court of Wyoming.

March 17, 1975.

Rehearing Denied April 23, 1975.

Edward P. Moriarity, of Urbigkit, Moriarity, Halle & Mackey, Cheyenne, for appellants.

George F. Guy and Ward A. White, of Guy, Williams & White, Cheyenne, for appellees.

Before GUTHRIE, C. J., and RAPER and THOMAS, JJ.

RAPER, Justice.

One of the plaintiffs-appellants, a four-year-old child, on July 16, 1970, fell out of a window on the fourth story of a University of Wyoming dormitory. Needless to say, severe injuries were sustained. He was occupying a room with his parents, the other plaintiffs-appellants, while they attended an institute at the university. His parents brought this suit for damages on his and their behalf, against the University of Wyoming and its trustees, defendants-appellees, charging negligence of various sorts. There are other defendants, but they are not parties to this appeal.

There is only one primary question, though because of appellants' Gatling gun approach we must touch others of a secondary nature. Before filing suit, was it necessary to first file a claim with the auditor of the State of Wyoming, pursuant to § 9–71, W.S.1957:

"Persons having claims against the state shall exhibit the same, with the evidence in support thereof, to the auditor, to be audited, settled and allowed, within one year after such claim shall accrue, and not afterward."

No sworn or certified claim of any sort was ever filed with the state auditor, nor has any similar claim been filed with the appropriate officer of the University of Wyoming before initiating a lawsuit. The only claims ever made have been by lawsuits against the university and its trustees, though plaintiffs argue that various actions by plaintiffs and their representatives con-

stitute proper claims. The first suit was filed in the United States District Court for Wyoming on December 1, 1970. It was dismissed by plaintiffs themselves, when it was called to their attention that Art. I, § 8, Wyo.Const., requires suits against the State to be brought in such courts as the legislature designates.

Ten years following the decision of the Supreme Court of Wyoming in Hjorth Royalty Co. v. Trustees of University of Wyoming, 30 Wyo. 309, 222 P. 9, a 1923 case, wherein was affirmed a sustained demurrer and a holding that a quiet title action against the trustees of the University of Wyoming was a suit against the State, the legislature enacted § 1–1018, W.S. 1957, providing:

"Any action permitted by law, which shall be brought against Wyoming farm loan board, board of land commissioners, state board of charities and reform, public service commission of Wyoming, state board of equalization of Wyoming, or the trustees of the University of Wyoming is hereby declared to be an action against the State of Wyoming and hereafter no action shall be brought against any of such boards, commissions or trustees except in the courts of the State of Wyoming and no action shall be maintained against any of such boards, commissions or trustees in any other jurisdiction."

The plaintiffs believe that the filing of a formal claim before suit is unnecessary in the light of all that has been done to call attention to their claim, in assorted ways:

1. University personnel investigated the occurrence when the little boy fell.

2. Correspondence requesting information was written to university officials.

3. The case was filed in federal court, in which service of summons was made on the financial vice president of the University of Wyoming and an answer was filed.

4. Attorneys for defendant-university took the depositions of plaintiffs-parents.

5. The case was filed in the Laramie County district court and service has been made on a secretary in the office of the University of Wyoming president.

6. This is really a suit against the liability insurance carrier of the university. Therefore, the State and university are out of it; no state money will be disbursed; the insurance company has all the notice it needs of plaintiffs' claim and has been investigating and defending itself from the time the federal case was started.

It is the position of the plaintiffs that as a practical matter all these various acts on their part serve as a substitute for the statutory requirement.

■ We hold that none of the actions taken by plaintiffs constitute the form of claim contemplated by § 9–71, and a formal claim, in proper form, exhibited to the state auditor, is a condition precedent to the filing of an action against the State of Wyoming, either under § 1–1018 or directly against the State and whether or not there is liability insurance.

Section 9–71 implements Art. XVI, § 7, of the Wyoming Constitution, which, on the date of the occurrence in this case, provided as follows:

"No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or political sub-division, shall be audited, allowed or paid until a full itemized statement in writing, verified by affidavit, shall be filed with the officer or officers whose duty it may be to audit the same." [1]

1. Amended by a resolution adopted by the 1969 legislature, Original House Joint Resolu-

tion No. 2, Session Laws of Wyoming, 1969, p. 491, ratified by a vote of the people at

In a lawsuit involving neglect to file a claim before initiating the case, this court held in Utah Construction Co. v. State Highway Commission, 1933, 45 Wyo. 403, 19 P.2d 951,[2] that the failure of plaintiffs to present a claim to the state auditor or to the state highway superintendent was fatally defective. The court did not discuss the problem that might be raised as to whether or not the claim should be filed with the superintendent of the Wyoming state highway department or with the state auditor in the light of a statute requiring claims to be approved by the state highway superintendent and closed the subject by saying, "* * * The point is probably immaterial, as the petition fails to show that the claim was presented to either the state auditor or the highway superintendent." (Pp. 417–418 of the Wyoming Reports and p. 952 of the Pacific Second Reporter.) The situation is the same here. No formal claim fitting the requirements of Art. XVI, § 7, of the Wyoming Constitution, or § 9–71 has been filed with either the state auditor or the appropriate University of Wyoming official.

In Utah Construction the court very simply disposed of the problem by stating that the statute, now § 24–29, W.S.1957, C.1967, giving the right to sue the state highway commission cannot be given a meaning that would evade the mandatory constitutional provision prohibiting the audit, allowance, or payment of a claim until it has been filed with the auditing officer, and that it did not have the effect of repealing or modifying § 9–71, requiring claims to be exhibited to the auditor "within one year after such claim shall accrue, and not afterward."

The appellants contend that the facts of the case now before the court do not fall within § 9–71, since, under no circumstances will there be any payments made out of the state treasury, the claim being completely covered by the insurance policy which the University of Wyoming has and the payments will be from the insurance company and not from University of Wyoming state-appropriated funds or the state treasury.

The plaintiffs want us to speculate that when the legislature said that there would be a claim filed with the proper officer, there was some sort of an exception written into § 9–71 that it is not necessary if there be insurance. We do not see invisible words and must accept the constitutional provisions and statutory requirements as we behold them. This court has many times stated that it is a universal rule that courts will not enlarge, stretch, expand or extend the statute to matters not falling within its express provisions. Lo Sasso v. Braun, Wyo.1963, 386 P.2d 630, 632.

The tort case of Price v. State Highway Commission, 1946, 62 Wyo. 385, 396, 167 P. 2d 309, 312, re-affirmed the proposition that a plaintiff's complaint is defective in its failure to allege presentation of his claim to the state auditor, as required by law, and a demurrer was properly sustained. We now have the Wyoming Rules of Civil Procedure and the pleading is attacked by a motion to dismiss for failure to state a claim rather than by demurrer. The district court sustained such a motion in the instant case. The plaintiffs attempted to evasively plead filing of a proper claim, but admissions and documents in the file show to the contrary.[3]

the general election held November 3, 1970, 1971 Wyoming Official Directory, p. 92, and proclaimed in effect on December 3, 1970, records of the Secretary of State. It was changed to delete the words, "verified by affidavit," by substituting in their place the words, "certified under penalty of perjury."

2. Utah Construction was first initiated in the United States District Court for Wyoming and found its way to the Supreme Court of

the United States, 1929, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262. The court there held that it was sufficiently clear that the suit was, in effect, against the State of Wyoming and that the commission was but the arm or alter ego of the State with no funds or ability to respond in damages.

3. The motion to dismiss for failure to state a claim under Rule 12(b)(6), W.R.C.P., was actually a motion for judgment on the plead-

The plaintiffs seem to feel that the insurance company is the only one having any interest in their claim; in this, they are mistaken. There are other considerations which combine to establish that the filing of a claim requirement bears a rational relationship to a legitimate government interest.[4]

■ There is another equally important reason why the interest of the State as a party cannot be ignored. As noted in Collins v. Memorial Hospital of Sheridan County, Wyo.1974, 521 P.2d 1339, 1344, we have no "direct action statute." An insurance liability by virtue of the policy must be predicated upon a recovery against the insured and because of the failure of the appellant to comply with the condition precedent before this suit, it cannot be maintained.

The plaintiffs seem to find some magic in the use by the legislature of the term "body corporate" in referring to the board of trustees of the University of Wyoming (§ 21–352, W.S.1957). An examination, however, of the duties of the board of trustees fails to distinguish it from the highway commission or the game and fish commission or the state board of charities and reform or the numerous other commissions and boards charged with the management and operation of a multitude of state agencies. The state highway commission controls millions of dollars in state assets in the shape of its miles upon miles of state highways and associated facilities. The state board of charities and reform has millions of dollars in state assets in the various institutions, ranging from the state penitentiary to a state hospital. The assets of the State, managed by the board of trustees of the University of Wyoming, only serve a different state function—higher education. All are dependent upon legislative control. Though at times it may appear, in their zeal to perform their assigned tasks, various state agencies have declared their independence from the State of Wyoming, still when we slash through the superficiality, we get down to the fact that these are all state bodies under one flag, having but one function, and that is serving the totality of state government. It is a delegation of various phases of state government.

■ The board of trustees of the University of Wyoming and the Wyoming highway commission have only such au-

ings, converted to and treated as a motion for summary judgment, allowed by Rule 12(c), W.R.C.P. There is no genuine issue of the material fact that no verified or certified claim or any other sort of claim was made upon or filed with or in the office of the state auditor at any time, let alone within the one-year limitation.

4. While there may be others, we can think of several reasons why the State has a real interest and the requirement of filing a claim before suit has useful purposes: (1) Premiums for insurance are expensive. It is in the interest of the State that there be control of the claims made against it even though to be paid from insurance money. The treasury is interested if the claims become excessive; if they do, it is common knowledge that the premiums go up with the increased risk. Budgeting is a real concern of modern government. (2) The State should reserve the right to discourage the payment of unjust claims by an insurance company and, on the other side of the coin, should be alert that the honor of the State is maintained in the handling of claims and to assure that just claims are being disposed of by the insurance carrier, if there be insurance. (3) While we can assume the solvency of an insurance company, if for some reason that ability should become impaired, any judgment may become an obligation of the State of Wyoming and appropriated funds would thereafter be necessary in payment. This possibility was raised in Utah Construction, supra. (4) It must be realized that it is the University of Wyoming being accused of misconduct in being negligent and causing the injury of a youngster and no negligence on the part of the insurance company is charged. The State of Wyoming cannot wash its hands of such a responsibility so there is more than money that is here involved. It has the interest of defending itself against what could be badly placed charges and otherwise maintaining the integrity of state government by correcting dangerous situations, if they exist. (5) It would well be in the interest of the State to urge a settlement by the insurance carrier and avoid a lawsuit.

thority as bestowed upon them by the legislature of the State of Wyoming. We single out the highway commission because it is with that agency where our ruling case law on the point of concern was developed. As a matter of fact, it would appear that more authority is placed in the highway commission than in the university board of trustees in that at least the highway commission has authority to sue and be sued (§ 24–29, W.S.1957, C.1967).[5] The university board of trustees does not have similar authority, unless it can be inferred from § 1–1018, declaring any suit against the trustees of the University of Wyoming to be an action against the State of Wyoming. However, such an inference is not allowed because of the introductory words appearing in that section, *"Any action permitted by law,* which shall be brought against * * * the trustees of the University of Wyoming is hereby declared to be an action against the State of Wyoming * * *."* [Emphasis added.] There is no authority to sue the board of trustees of the University of Wyoming; it is not "permitted by law"; the suit should have named the State of Wyoming and not the university and its trustees, if it is possible to sue the State directly and that is a problem of some future test.

This same observation was made by the court in Williams v. Eaton, C.A.10, 1971, 443 F.2d 422, n. 5, p. 427, on remand D.C., 333 F.Supp. 107, aff. 468 F.2d 1079, where, after stating that the board of trustees of the University of Wyoming is constituted a body corporate and given numerous powers pursuant to §§ 21–352 and 21–353, W.S. 1957, noted, " * * * However, there is no provision in these statutes authorizing suits against the Trustees. * * *"

It is our further view that since Art. I, § 8, Wyo.Const., provides that, " * * * Suits may be brought against the state in such manner and in such courts as the leg-

islature may by law direct," and since there is no authority for any suit against the university or its board of trustees, the suit should at least in theory have been initiated directly against the State of Wyoming, and the wrong parties are named even if we exclude the question of sovereign immunity, arguendo. Such a case against the State of Wyoming may not have survived judicial scrutiny, without legislative authority, but that is not a question in this appeal. Retail Clerks v. University of Wyoming, Wyo.1975, 531 P.2d 884, casts doubt. The members of the board of trustees are not being sued as individuals or being charged with any personal responsibility for any negligence with respect to the plaintiff child; they are not proper parties to this case. They are sued under plaintiffs' misplaced theory of "body corporate," in an attempt to reach the insurance.

Plaintiffs argue that § 9–71 is not applicable because it is an element of sovereign immunity which has been waived by the terms of the insurance policy and is not being asserted by the defendants or the insurance company. Counsel for the defendants agree that the sovereign immunity is not being claimed but contend the necessity of filing a claim is unrelated in that it neither aids nor hinders the bringing of an action considered to be one against the State where there is insurance but is an important procedural requirement.

In the face of well-established law in Wyoming that the filing of such a claim under § 9–71 is a condition precedent to suit, we are hesitant to reverse the holdings of Utah Construction, supra, and Price, supra. We recognize that the requirement as interpreted by those cases was judicially created because no statute specifies that the claim is a condition precedent to suit, but we re-affirm their holdings. We realize and take into consid-

5. Authority to sue or be sued does not in itself grant immunity of a governmental agency from tort liability. Bondurant v. Board of Trustees of Memorial Hospital of Converse County, Wyo.1960, 354 P.2d 219, 221. See Anno. 25 A.L.R.2d 203, 224, in that case cited. What this does mean, however, is that the agency can when so authorized be brought into court; otherwise, its parent must be held to account and speak for it, in a proper case.

eration, as observed in 57 Am.Jur.2d (Municipal, Etc., Tort Liability) § 24, p. 33, the doctrine of governmental immunity from suits for torts is currently in disfavor. The court has gone about as far as it desires on the matter of waiver of immunity by the purchase of insurance and confines the point to the situation outlined in Collins v. Memorial Hospital of Sheridan County, supra, and other cases where clearly approved. In that case, the court made special mention of the fact that the county hospital board had the power to sue and be sued, and there did not arise in that case the question of any requirement that a claim be filed prior to suit. The State of Wyoming appears to have immunity from suit, except in those cases that might be encompassed by the factual structure and doctrine of Collins and in proper cases of immunity waiver. We are not going to use that case as a vehicle to wipe out conditions precedent to filing a lawsuit against the State or those state agencies authorized to be parties to a lawsuit.

This court ought to be consistent in its reasoning and afford some stability to its precedents, though it must be cautiously responsive to modern trends, when backed by sound and tested reason. We must avoid back-lash into other areas. For example, if we were to eliminate the requirement of the timely claim as a condition precedent, in the face of insurance, it would probably also knock out the case of Lo Sasso v. Braun, supra, where many of the same arguments made by plaintiffs here were made in that case, involving the estate of a decedent. The plaintiff there failed to file a claim in the estate within the time allowed for filing claims. Plaintiffs took the position that since there was liability insurance, there was no necessity to file a claim, because none of the assets of the decedent's estate were at stake. We are not so much interested in the fact that there may be some distinctions between a claim against a decedent's estate and a claim against the State of Wyoming, as we are in the reasoning of the court, which calls forthright attention to the fact that courts

cannot supply omissions in a statute and will not read into a statute exceptions not made by the legislature and if such provisions seem harsh, redress should be made to the legislature and not to the courts, it not being the duty of a court to make laws, but it is our duty to construe and enforce the laws enacted by the legislature. In 1971, this court saw fit to follow Lo Sasso. In re Estate of Baker, Wyo.1971, 483 P.2d 513, reh. den. 484 P.2d 1175. The practicing bar and the district courts have depended upon this concept and it has become settled.

We can find no reason to here upset precedent. The advance filing of claims serves valuable purposes, as before outlined in this opinion. In this same vein, we should look at the experience in other states.

■ The supreme court of California abrogated government immunity in Muskopf v. Corning Hospital District, 1961, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457, with respect to a hospital district. The same court in Dias v. Eden Township Hospital District, 1962, 57 Cal.2d 502, 503, 504, 20 Cal.Rptr. 630, 631, 370 P.2d 334, 335, decided that there is no merit to the argument that the abrogation of immunity eliminated the requirement for presentation of claims as a condition to the maintenance of actions against public entities and stated that,

"* * * The principal purpose of such statutes is to give a public entity timely notice of the nature of claims against it so that it may investigate and settle those of merit without litigation. [Citing case.] To the extent that immunity is abrogated the importance of these considerations is increased.

"Likewise without merit is the contention that, since it is not necessary to file a claim before maintaining an action against a private nonprofit corporation operating a hospital for the use of the public, the statutory requirement that a claim must be filed before bringing an action against a hospital district constitutes an arbitrary and unreasonable dis-

crimination. Public agencies, generally speaking, afford a proper subject for legislative classification."

In a later case, the supreme court of California continued on this same line. Tammen v. County of San Diego, 1967, 66 Cal.2d 468, 480, 58 Cal.Rptr. 249, 426 P.2d 753. It is indicated in Whitfield v. Roth, 1974, 10 Cal.3d 874, n. 20, 112 Cal.Rptr. 540, n. 20, 519 P.2d 588, n. 20, that the rule is still being followed and there is no successful constitutional attack that has been made.

■ In Lunday v. Vogelman, Iowa 1973, 213 N.W.2d 904, 907, the plaintiff argued that the requirement of filing a claim prior to suit denied him of equal protection because it unreasonably puts victims of governmental torts in a different class than victims of private torts, the same as argued by plaintiffs here, in that tort claims against governmental subdivisions are subject to the special notice requirement, whereas tort claims against private persons are not. The court, after a considerable discussion · of the constitutional standards of classification, decided that such a claim requirement does bear a rational relationship to a legitimate government interest, and explained,

> "The fundamental motivation attributed to legislatures which have enacted such notice requirements is that where a governmental subdivision is involved the public has an interest it does not have as to claims against private persons in seeing prompt and thorough investigation of claims is made. This protects the public treasury from stale claims. [Citing case.] It permits prompt settlement of meritorious claims and facilitates planning of municipal budgets. [Citing case.] The notice requirement also ensures that notices reach the public officers with responsibility to deal with them and in many instances should enable such officers to remedy defects in

far-flung municipal property before other persons are injured."

We accept the views of California and Iowa in Dias v. Eden, supra, and Lunday v. Vogelmann, supra, respectively. We recognize Michigan in Reich v. State Highway Department, 1972, 386 Mich. 617, 194 N.W.2d 700, [6] and Grubaugh v. City of St. Johns, 1970, 384 Mich. 165, 180 N.W.2d 778, as well as Nevada in Turner v. Staggs, 1973, 89 Nev. 230, 510 P.2d 879, cited by plaintiffs, as contra but consider them foreign to the concept we prefer. To do otherwise would have us ignore the Constitution of the State of Wyoming, the statutes of the state, and the substantial case law of this court.

None of those cases, even the ones we favor, meet the Wyoming situation head on. In Dias, there is a statutory waiver of immunity and insurance was not a subject of the decision. The same is true of Lunday, Reich and Grubaugh. Illinois has gone both ways under a statute abrogating immunity. If no insurance, claim notice required. King v. Johnson, 1970, 47 Ill.2d 247, 265 N.E.2d 874. If optional authorized insurance, no claim notice required. Housewright v. City of LaHarpe, 1972, 51 Ill.2d 357, 282 N.E.2d 437. One thing in common with all the cited cases is that they involve local political subdivisions, not the vast problem of a total state government. We have borrowed their ideas and reasoning, where fitting.

We must meet another assault made by plaintiffs upon § 9–71, that it constitutes a statute of limitation and Wyoming has a policy that statutes of limitation shall not run against minors. Section 1–22, W.S. 1957, in effect in 1970, is in the following language:

> "If a person entitled to bring any action mentioned in this article, except for a penalty or forfeiture, is, at the time the cause of action accrues, within the age of twenty-one years, insane or imprisoned, such person may bring such action

---

6. The Iowa Supreme Court in Lunday, supra, considered Reich v. State Highway Department but discarded it.

within three years after such disability is removed; provided, nothing herein shall be construed as requiring a person formerly under disability to bring any action within any shorter period than is extended to persons not under disability."

In other words, plaintiff, a minor, four years of age at the time of the accident, claims he has until age 24 to file a claim with the auditor—year 1990. In spite of this bizarre view, we shall discuss it, anyway.

"It is competent for the legislature to put infants and adults upon the same footing with respect to a limitation law, and this is the effect of a statute containing no savings clause exempting infants. Thus, minority does not per se bestow immunity upon an infant or his guardian without a legislative saving in his favor, and a statute of limitations will ordinarily run against the claims of infants in the absence of a contrary statute or provision." 51 Am.Jur.2d (Limitation of Actions) § 182, p. 750.

That rule is supported by the following cases: Gasparro v. Horner, Fla.App.1971, 245 So.2d 901; Lametta v. Connecticut Light & Power Co., 1952, 139 Conn. 218, 222–223, 92 A.2d 731, 733; Barbour v. Williams, 1944, 196 Miss. 409, 416, 17 So. 2d 604, 606.

■ Section 9–71 is not a statute of limitation in the same sense as those enumerated in §§ 1–15 to 1–22, W.S.1957.[7] Section 1–22, while it is a savings clause with respect to those statutes of the chapter of which they are a part pertaining to the filing of actions, bears no relationship to § 9–71 which is not a limitation on filing an action. It is a limitation on filing a claim; it makes no exception as to minors and so a minor is not excused from filing a claim within one year. As said in 51 Am.Jur.2d (Limitations of Action) § 138, p. 708:

"While most courts give recognition to certain implied exceptions arising from necessity, it is now conceded that they will not, as a general rule, read into statutes of limitation an exception which has not been embodied therein, however reasonable such exception may seem and even though the exception would be an equitable one. The modern rule of construction in this respect is that unless some ground can be found in the statute for restraining or enlarging the meaning of its general words, it must receive a general construction, and the courts cannot arbitrarily subtract therefrom or add thereto. Undoubtedly, a hardship will result in many cases under this rule, but the court may construe only the clear words of the statute, and if its scope is to be enlarged, the remedy should be legislative rather than judicial. * * *"

■ The plaintiffs have indicated that they have been misled by the defendants' counsel when they stated that they would not raise the question of immunity. The contract of insurance so specified, as well. We are not here, however, deciding questions of sovereign immunity, except peripherally. We are discussing and deciding questions of serious and important prerequisite jurisdictional procedures, without which we might as well abandon all rules of orderly conduct of lawsuits, disregard the mandates of the legislature and place everything upon an equitable basis of what we, as judges, might think the arrangement from day to day ought to be. Plaintiffs' claim of estoppel is without merit; we cannot set up a government or court of men and not of law.

Before winding up this opinion, we must discuss the purchase of insurance by the University of Wyoming. The defendants have agreed not to raise the question of sovereign immunity and they are represented by insurance company counsel. Since

7. We have not overlooked § 1–12, W.S.1957, in its policy: "Civil actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues; but where a different limitation is prescribed by statute, that shall govern."

the case is disposed of on several other grounds, we need not dig into the matter of absence of specific statutory authority of the university to procure liability insurance but mention it to show its current status—more in the nature of an epilogue. It is understandable why counsel for defendants do not raise the point but that does not prevent the court from being curious.

This court has on at least three occasions refused tort recovery in the presence of insurance, the act of procurement being ultra vires. Davis v. Board of County Commissioners of Carbon County, Wyo. 1972, 495 P.2d 21; Maffei v. Incorporated Town of Kemmerer, 1959, 80 Wyo. 33, 338 P.2d 808, reh.den. 340 P.2d 759; Price v. State Highway Commission, supra. It must be accepted that Collins v. Memorial Hospital of Sheridan County, supra, sets aside Davis and Maffei, both involving local government. Price, involving a state agency, was not mentioned. The Wyoming state highway commission, following Price, finally got its authority in 1961, § 24–42.1, W.S.1957, C. 1967: [8]

"That the state highway department is hereby authorized to secure and maintain [insurance] against the risks of fire and theft or such other insurance as shall be deemed necessary on all motor vehicles and trailer attachments owned by the state highway department. The insurance so to be secured and maintained shall be in an amount which, in the judgment of the department, shall be adequate to protect the interests of the State of Wyoming and the state highway department. In securing such insurance the board shall take full advantage of experience ratings and groupings or master policies to the end that such insurance may be secured at the lowest possible beneficial rates and for the best interest of the State of Wyoming and the state highway department."

The university did not have express statutory authority to purchase liability insurance covering this 1970 occurrence. That authority may now exist but only through the purchasing and property control division of the department of administration and fiscal control, State of Wyoming. In 1971, that agency was granted such authority by § 9–276.18:69, W.S.1957, 1973 Cum.Supp., in three separate subsections.[9]

What this really does is grind a little sharper the point earlier made that the State has a keen interest in having notice of the claims made against its insurance policies delivered to a central location—the office of the state auditor.

Until such time as the state legislature adopts some uniform system of handling state tort liability, either by sovereign immunity abrogation or limited coverage by

---

8. Repealed, Session Laws, 1971, Ch. 203, § 30, but see § 9–276.18:69 of the same act, infra, n. 9.

9. Pertinent subsections are:
"(l) Secure and maintain insurance or otherwise protect against fire and other perils on all buildings and structures and the contents thereof, and other properties owned by the State of Wyoming or any of its agencies. The insurance so to be secured and maintained shall be in an amount which, in the judgment of the department, shall be adequate to protect the interest of the State of Wyoming and, where appropriate, the interest of the United States.
"(m) Secure and maintain insurance against the risks of fire and theft and such other insurance as shall be deemed necessary on all motor vehicles and trailer attachments owned by the State of Wyoming or any of its agencies. The insurance so to be secured and maintained shall be in an amount which, in the judgment of the department, shall be adequate to protect the interest of the State of Wyoming. The department shall not, however, under the mandate of this section, purchase any policy insuring against the risks of collision or upset. In securing such insurance the department shall take full advantage of experience ratings and groupings or master policies to the end that such insurance may be secured at the lowest possible beneficial rates and for the best interest of the State of Wyoming.
"(n) Secure personal liability and surety bonds for employees and state officials as required by statute."

insurance, the court is unwilling to now contribute to a hodge-podge of rules with a hodge-podge of exceptions. Whatever that branch does, consideration must be given to the economics of insurance premiums versus appropriated funds.

The trial judge properly sustained the motion for judgment on the pleadings, treated as a motion for summary judgment under Rule 56, W.R.C.P., as to the defendants University of Wyoming and the trustees of the University of Wyoming.

Affirmed.

GUTHRIE, C. J., concurs in the result.

## ORDER

The court having examined the application for rehearing heretofore filed herein by appellant, and being fully advised,

It is ordered that the said application be and the same is hereby denied.

McCLINTOCK, J., not participating.

ROSE, J., wishes the record to reflect that he did not sit on the original case or participate in the decision-making process and therefore expresses no opinion as to the result reached.

However, in examining the record, the opinion, and the grounds relied upon in the petition for rehearing, he applies the Wyoming Supreme Court rule applicable to such matters as expressed and employed traditionally in this court. See Town of Glenrock v. Chicago & North Western Ry. Co., 73 Wyo. 385, 279 P.2d 894, 281 P.2d 455.

The rule is that where the only reason advanced for a rehearing is simply reargument and repetition of counsel's views which have already received consideration, the Supreme Court will not grant a rehearing.

He finds no new facts or propositions of law relied upon in the petition for rehearing which were not originally considered by the Supreme Court in the case on appeal and therefore, for this reason and only for this reason, would deny the petition for rehearing.