Thomas A. ALEWINE and Jeffrey A. Alewine, a Minor Child, by and through his next friend, Thomas A. Alewine, Appellants (Plaintiffs),

v.

STATE of Wyoming, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF PUBLIC ASSISTANCE AND SOCIAL SERVICES, Appellee (Defendant).

No. 89–217.

Supreme Court of Wyoming.

Jan. 4, 1991.

---

Fred R. Dollison and J. John Sampson, Sheridan, for appellants.

Jeffrey A. Donnell of Davis, Donnell, Worrall & Bancroft, P.C., Worland, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Jeffrey Alewine, a minor, and Thomas Alewine, individually and as Jeffrey's next friend, appeal from summary judgment granted to the State of Wyoming Division of Public Assistance and Social Services (D–PASS) on their claims which arose from D–PASS' de facto guardianship of Jeffrey between June 16, 1985, and March 23, 1988. The Alewines sought to recover for alleged

violations of civil rights under 42 U.S.C. § 1983, for intentional interference with child custody, and for intentional and negligent failure and refusal to reunify a family. Claims were also asserted on Jeffrey's behalf for institutional neglect and abuse, unlawful detention, and unlawful conversion of social security monies.

The trial court determined that the Alewines' complaint failed to state a cause of action for the alleged civil rights violation and that the remaining claims were barred by the Governmental Claims Act, W.S. 1–39–101, et seq. (June 1988 Repl.) sovereign immunity, and the W.S. 1–39–113(a) (June 1988 Repl.) statute of limitations. In their appeal the Alewines do not dispute summary judgment as to Thomas Alewine's claims, but argue that Jeffrey's negligence claims were improperly dismissed. Although stating the § 1983 claim, they proceed to waive it in light of *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). We affirm summary judgment as to the § 1983 claim, but reverse and remand on Jeffrey's negligence claims.

The Alewines present two issues for consideration:

I. This court should carve out an exception to the Wyoming Governmental Claims Act, Wyoming Statute, Sections 1–39–101 et seq, for claims against the state, its agencies, departments and officials which otherwise would have been cognizable under 42 United States Code, Section 1983, prior to the decision of *Will v. Michigan Department of State Police*, 491 U.S. 58, 105 L.Ed.2d 45, 109 S.Ct. 2304 (1989).

II. Did the court err in granting summary judgment on Jeffrey A. Alewine's negligent (sic) claims?

D–PASS responds by framing these issues as:

I. The district court was correct in granting Appellee's motion for summary judgment with respect to Appellants' claims under 42 U.S.C. § 1983.

II. The district court was correct in granting Appellee's motion for summary judgment with respect to the negligence claims of Jeffrey A. Alewine.

## FACTS

Jeffrey Alewine is the son of Thomas Alewine; his mother, Linda Alewine, is now deceased. He was born on April 8, 1977, in Missouri. His parents were separated at the time of his birth and were subsequently divorced on July 15, 1977. Thomas Alewine gave up his efforts to see his son after his first attempts to exercise his visitation rights were thwarted by Linda Alewine and her family. In March, 1979, after an order amended the divorce decree to let Linda leave Missouri and require that Thomas make support payments directly to her, Linda and Jeffrey Alewine moved to Gillette, Wyoming. She did not inform Thomas Alewine of their new location and he was unable to locate them and lost all contact with his ex-wife and child.

In 1982 Linda Alewine learned that she had a degenerative and terminal illness and sought assistance from D–PASS. D–PASS initially tried to arrange a heart-lung transplant for Linda and provided public assistance and legal services for her. In 1984 it became apparent to Linda and the D–PASS personnel who assisted her that she would not live much longer and that alternative arrangements needed to be made for Jeffrey. To ensure continuing care for Jeffrey, Linda Alewine executed an "Agreement and Consent of Parent for Adoption" on June 4, 1984, which stated that Jeffrey was born out of wedlock and relinquished custody of Jeffrey to D–PASS in the event of her death. On June 20, 1984, she also signed an affidavit that identified Thomas Alewine as Jeffrey's natural father. On January 23, 1985, Linda executed a will, paid for by D–PASS, that named the agency as Jeffrey's guardian on her death.

D–PASS made a brief effort to locate Thomas Alewine in 1984. It was unsuccessful and the matter was dropped. Linda

Alewine died on June 16, 1985. She had already placed Jeffrey with a Gillette couple, and D–PASS continued that arrangement on a supervised foster care basis. Another attempt was made to locate Thomas Alewine, including a search by the state parent locator service, but D–PASS did not find him. This attempt was also dropped. Jeffrey remained with his foster parents, who were approved for adoption although no formal action was taken on either the adoption or the termination of Thomas Alewine's parental rights. D–PASS paid the foster care costs and collected social security survivor benefits for Jeffrey, which were forwarded to the state as partial reimbursement for the foster care expenses.

Thomas Alewine, who was still in Missouri, learned of Linda Alewine's death during a chance discussion on October 27, 1987. He immediately began a search for Jeffrey. He received the phone number of Gillette attorney Douglas Lesley from his father, and on October 29, 1987, learned from Lesley that his son was in Gillette. He travelled to Gillette and requested custody of his son from D–PASS personnel on November 9, 1987. His request was refused, and he then filed a petition for a writ of habeas corpus, on which a hearing was held on November 13, 1987. On the same date Jeffrey's foster parents filed an adoption petition.

The district court concluded that the relinquishment was misleading, that D–PASS had not made any effort to legitimate its continuing custody of Jeffrey, and that the child had a right to know his father and have a relationship with him. It issued an interim order permitting visitation between Jeffrey and Thomas Alewine and ordering an investigation into the background and circumstances of Thomas Alewine before entering its final order. On March 23, 1988, the district court awarded custody of Jeffrey to Thomas Alewine. Thomas and Jeffrey Alewine then returned to Missouri. They filed their notice of claim as required by the Governmental Claims Act on September 21, 1988, and this action followed on November 1, 1988.

### 42 U.S.C. § 1983 CLAIM

■ 42 U.S.C. § 1983 provides that [e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory * * * subjects * * * any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * *.

■ The Alewines concede that their § 1983 claim is without merit because of the United States Supreme Court pronouncement in *Will* that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at ——, 109 S.Ct. at 2312, 105 L.Ed.2d at 58. However, they have attempted to craft an argument for a judicially created exception to the Governmental Claims Act that would preserve their suit. This court has clearly expressed its recognition of the directive of art. 1, § 8 of the Wyoming Constitution that *"[s]uits may be brought against the state in such manner* and in such courts *as the legislature may by law direct."* *White v. State of Wyoming,* 784 P.2d 1313, 1317 (Wyo.1989) (and cases cited therein). We will not deviate from the view that the power to determine whether, and to what extent, the state is liable to suit is vested in the legislature. As we recently said, "to hold otherwise would be tantamount to holding the constitution unconstitutional." *Id.* We decline the invitation to usurp the legislative function and affirm the trial court's disposition of the Alewines' § 1983 claim.

### JEFFREY ALEWINE'S NEGLIGENCE CLAIMS

We find that the trial court erred regarding Jeffrey Alewine's claims. The court

concluded, and Thomas Alewine does not dispute, that the period for giving the state notice of his claim expired through his lack of diligence. Jeffrey's claims were not specifically addressed in the decision letter. However, the district court apparently granted summary judgment against Jeffrey because of his father's lack of diligence.

Although no reason was given for rejecting Jeffrey's claims, D–PASS argues that summary judgment was appropriate because Jeffrey did not prove that the state had insurance coverage for the alleged injuries; he failed to notify the state of his claim within the two-year period prescribed by W.S. 1–39–113; and, because Jeffrey is a minor, the failure of his father to act on his behalf within that two-year notice period bars the claim. D–PASS rests the latter contentions on this court's holding in *Awe v. University of Wyoming*, 534 P.2d 97 (Wyo.1975) and its analysis of the discovery rule, which looks to the parents' knowledge to establish the time that the injury is discovered. We do not find that our holding in *Awe* forecloses Jeffrey's suit and believe that the facts in this case prevent application of the discovery rule advocated by D–PASS and entitle Jeffrey to a trial on his negligence claims. We note that the cases cited by D–PASS to bolster its reading of the discovery rule as applied to minors do not involve similar situations, and one, *Banda By and Through Banda v. Danner*, 87 Or.App. 69, 741 P.2d 514 (1987), actually rejects the proposition it is cited for.

 D–PASS' first argument that Jeffrey failed to establish the existence of state insurance coverage is meritless. The district court recognized in its decision letter the existence of a "brief interlude when Defendant was insured." Additionally, application of our standard for review of appeals from summary judgment makes clear that summary judgment for this reason would be inappropriate.

The Alewines averred in their second amended complaint that the state had purchased insurance for the acts complained of. It was the initial responsibility of D–PASS, as the moving party, to show that no genuine issue of material fact existed. *Jung–Leonczynska v. Steup*, 782 P.2d 578, 582 (Wyo.1989). D–PASS responded to the averment with the affidavit of Monty Lauer, insurance manager for the State Department of Administration and Fiscal Control, in which he stated that the state had no comprehensive general liability insurance coverage for liability accruing *after* November 1, 1985. We then examine the record in the light most favorable to Jeffrey, the nonmoving party, and accord him all favorable inferences. *Id.* The inference then derived from Lauer's affidavit is that the state *did* have comprehensive insurance coverage before November 1, 1985.

 If the moving party does not refute the averment of the nonmoving party, the nonmoving party may rely on its averment and has no obligation to present any factual support. *Id.* D–PASS' evidence does not refute Jeffrey's averment of insurance coverage. An unrefuted averment is sufficient to state a claim on which relief can be granted. *Id.* On this basis Jeffrey is clearly entitled to proceed to trial on his claim for alleged negligence occurring before November 1, 1985.

 It is true that Jeffrey did not notify the state of his claim within two years of when it accrued. However, it is also true that W.S. 1–39–113(a), provides for notification within two years of *discovery*. It would be an unduly harsh result to hold that a minor must somehow independently discover a legal injury of this nature. We agree with D–PASS' interpretation of the discovery rule to the extent that it recognizes that a minor is not expected to discover his own injury. To safeguard a minor's rights, a parent or guardian must have reasonable opportunity to know of the injury before any applicable statute of limitations begins to run against the minor.

Having argued that it is the parents' knowledge that is crucial, D–PASS then relies on this court's holding in *Awe.* However, in that case we applied W.S. 9–71 (1957) (now W.S. 9–1–404 (June 1987 Repl.)), which made no provision for discovery, to a claim for an injury that occurred in the parents' presence. Jeffrey's case presents us with a decidedly different situation. Here the injury arose after the death of Jeffrey's mother, who had not let Jeffrey's father know of Jeffrey's whereabouts. Before her death, D–PASS sought to become Jeffrey's guardian, and after her death acted in fact as his guardian for over two years, while apparently making little effort to locate Thomas Alewine, but instead attempting to arrange Jeffrey's adoption by others. Given the circumstances of this case it would be inequitable to hold that Jeffrey's claims are barred by his father's failure to discover them before he located his son. *Awe* does not stand for the proposition that a child's claim may be precluded when the parent did not have a reasonable opportunity to discover the injury.

In *Awe* we said, "minority does not per se bestow immunity upon an *infant or his guardian* without a legislative saving in his favor, and a statute of limitations will *ordinarily* run against the claims of infants in the absence of a contrary statute or provision." *Awe,* 534 P.2d at 105 (quoting 51 Am.Jur.2d *Limitation of Actions* § 182 at 750 (1970)) (emphasis added). The corollary of this holding is that minority may bestow immunity in unusual circumstances. To risk understatement, these facts are out of the "ordinary." It is not apparent that Thomas Alewine had reasonable opportunity to discover Jeffrey's injury on Jeffrey's behalf and thus trigger the W.S. 1–39–113(a) two-year time limit for giving notice of the claim.

While an absent parent may be held responsible for discovering his own injury, it may be unreasonable and unjust to the minor child to penalize the child for the parent's failure to discover his child's inju-

ry during the parent's absence. In Jeffrey's case it is D–PASS' intentional assumption of responsibility as his de facto guardian that is the very basis of his claim. The state's status as de facto guardian may affect not only the time of discovery for purposes of the notice of claim requirement, but may also serve to waive the notice of claim requirement altogether, as the state arguably had constructive notice of this minor's injury.

We note that other courts have reached a range of results when confronted with this type of problem, though the trend is towards protection of minors from the harsh result of strict application of notice of claim requirements. Annotation, *Local Government Tort Liability: Minority as Affecting Notice of Claim Requirement,* 58 A.L.R.4th 402 (1987). Some of the rationales employed to preserve the claims of minors are innovative. We do not find it necessary, however, to break new ground in this instance. Based both on the W.S. 1–39–113(a) provision for opportunity to discover the injury and on the peculiar circumstances of Jeffrey's custody from June 16, 1985, to March 23, 1988, there is a material question of fact as to whether Jeffrey timely notified the State of Wyoming of his claim within two years, or whether he is even required to formally notify the state of alleged injuries that occurred while D–PASS acted as his guardian in fact. Consequently, summary judgment is not appropriate on Jeffrey's claims.

Summary judgment on the Alewines' § 1983 claims is affirmed. It is reversed on Jeffrey Alewine's negligence claims, and those claims are remanded for trial.

THOMAS, J., filed an opinion concurring in part and dissenting in part.

THOMAS, Justice, concurring and dissenting.

I am in complete accord with the majority ruling in this case with respect to that portion affirming the summary judgment entered by the trial court in favor of the defendant on the claims asserted by the Alewines under Title 42 U.S.C. § 1983

(1986). I cannot agree, however, that the district court erred in entering summary judgment for the defendant on Jeffrey Alewine's claims for negligence. I would affirm the district court with respect to that ruling.

As to those claims, the district judge said in his decision letter, without differentiation:

"The Court finds that Plaintiff's 1st through 5th claims are barred by the Governmental Claims Act Sec. 1–39–101, et seq., the doctrine of sovereign immunity and by the statute of limitations, W.S. Sec. 1–39–113(a)." [1]

The majority says about this ruling:

" * * * The court concluded, and Thomas Alewine does not dispute, that the period for giving the state notice of his claim expired through his lack of diligence. Jeffrey's claims were not specifically addressed in the decision letter. However, **the district court apparently granted summary judgment against Jeffrey because of his father's lack of diligence.**" At 1376. (Emphasis added.)

I cannot acquiesce in the emphasized language since I am satisfied that the trial court treated both Thomas and Jeffrey quite alike, and it did not grant summary judgment against Jeffrey because of his father's lack of diligence. The gratuitous conclusion by the majority assigning that analysis to the trial court is conjectural.

Section 1–39–113(a), W.S.1977 (June 1988 Repl.), provides:

"(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the al-

leged act, error or omission, if the claimant can establish that the alleged act, error or omission was:

"(i) Not reasonably discoverable within a two (2) year period; or

"(ii) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence."

There is no savings clause exempting infants. The effect of the absence of such a savings clause was resolved in *Awe v. University of Wyoming*, 534 P.2d 97 (Wyo. 1975), which is a controlling precedent. The majority endeavors to distinguish *Awe* by invoking a discussion of the "discovery" rule in the quoted statute. That effort does not withstand analysis, and it becomes clear that the court really has reasoned from a conclusion that is perceived as equitable.

In *Awe*, this court aligned itself with those courts, said to constitute a majority view, which have held that claims statutes such as § 1–39–113, W.S.1977 (1988 Repl.), are applied equally to minors and adults in the absence of a savings clause or an express exception in favor of minors. *See* Annotation, *Local Government Tort Liability: Minority as Affecting Notice of Claim Requirement*, 58 A.L.R. 4th 402 § 3 at 425 (1987) [hereinafter *Annotation*]. In *Awe*, this court addressed a claim that the savings provision in favor of minors found in § 1–3–114, W.S.1977 (1988 Repl.), was applicable to the claims statute and said:

"Section 9–71 is not a statute of limitation in the same sense as those enumerated in §§ 1–15 to 1–22, W.S.1957. Section 1–22, while it is a savings clause with respect to those statutes of the chapter of which they are a part pertaining to the filing of actions, bears no relationship to § 9–71 which is not a limitation on filing an action. It is a limita-

---

1. I say that this occurred without differentiation even though the singular "Plaintiff's" was used because the court did that consistently in its decision letter, while also referring to "Plain-tiffs" in the plural at another point. I am satisfied that the court intended to, and did, treat with the claims of both the father and son in its decision letter.

tion on filing a claim; it makes no exception as to minors and so a minor is not excused from filing a claim within one year. As said in 51 Am.Jur.2d (Limitation of Actions) § 138, p. 708:

" 'While most courts give recognition to certain implied exceptions arising from necessity, it is now conceded that they will not, as a general rule, read into statutes of limitation an exception which has not been embodied therein, however reasonable such exception may seem and even though the exception would be an equitable one. The modern rule of construction in this respect is that unless some ground can be found in the statute for restraining or enlarging the meaning of its general words, it must receive a general construction and the courts cannot arbitrarily subtract therefrom or add thereto. Undoubtedly, a hardship will result in many cases under this rule, but the court may construe only the clear words of the statute, and if its scope is to be enlarged, the remedy should be legislative rather than judicial.' " *Awe*, 534 P.2d 97 at 105.

In this instance, the court is quite willing to foreclose Thomas Alewine's remedy because of his failure to file a claim, but the failure to file the claim is excused when he dons his hat as natural guardian of Jeffrey Alewine. How can the failure to file a claim bar a person from relief, but not bar that same individual when he presents a different mien? If the statute indeed does treat adults and minors alike, then this court has not followed the statute in this instance but instead has invoked a legislative remedy. It has moved Wyoming from the majority of jurisdictions described in *Annotation*, § 3 at 425, and has assigned our state to the other category of courts that hold that minority excuses strict compliance with the claims statute. *See Annotation*, § 19 at 447. In the process, it is clear that *Awe* has been overruled, not distinguished.[2]

If *Awe* were to be directly overruled, then it would be quite clear that the majority is adopting a savings clause or minority exception for the claims statute. Such an augmentation of a statutory provision is judicial legislation. The effort to reach the same end by distinguishing *Awe* not only fails of persuasion but must be recognized for what it is, judicial legislation. It, indeed, is as innovative as any other rationale to preserve the claims of minors.

Since, in this instance, I eschew judicial legislation, and the correct rule appears to be that there is no prospect for declaring the claims statute unconstitutional as applied to minors, *see Annotation*, §§ 8–10 at 434–438, I would affirm the summary judgment entered by the trial court in its entirety. In taking this stance, I concede that it would represent appropriate public policy if the legislature should at some time choose to adopt a savings clause or an exception for minors as an amendment to the claims statute. The court should not, however, usurp the legislative power.

---

**2.** I confess an aversion to overruling prior authorities *sub silentio.* If a case, in fact, is overruled, then it should be done in a clear and forthright manner. Covert jurisprudence simply results in confusion, rather than clarity, in the law.